## LANAHAN & SONS v. BAILEY.

LIQUORS—DISPENSARY LAW—ATTACHMENT—ORIGINAL PACKAGES.— Under the dispensary law, liquors shipped into this State, to be sold in original packages, cannot be attached and sold by the sheriff in satisfaction of a debt.

Before ALDRICH, J., Greenville, March, 1898. Reversed.

Action by Wm. Lanahan & Sons *v.* Emma E. Bailey, trading under the name of the Bailey Liquor Company. From an order refusing to dissolve an attachment, the defendant appeals.

*Mr. Jos. A. McCullough*, for appellant, cites: 13 Allen, 449; 36 Me., 322; 117 Mass., 591; 16 R. I., 622; 11 A. R., 298.

*Messrs. Wells, Ansel & Cothran*, contra, cite: Code, 253, 256.

Oct. 29, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. The case contains the following statement of facts: This is an action commenced November 8, 1897, upon an open account for liquors sold by plaintiffs, citizens of Maryland, to defendant, a citizen of Georgia. Amount of account, $1,575. The action was commenced by attachment upon certain stocks of liquors in the possession of J. E. Payne and F. M. Simmons, Greenville, and Cobb & Morris, in Abbeville. In August, 1897, the defendant, who was a large wholesale dealer in liquor in Atlanta, entered into several agreements with the said Payne, Simmons, and Cobb & Morris, by which each of them became the agent of said defendant for the sale of liquor in original packages in said localities. The defendant shipped large quantities of liquor to her said agents in original packages, and said agents conducted business for her under the protection of the interstate commerce law, and the decisions of the United States Court sustaining the same. That at the time said liquors were attached they were in the possession respectively of the said Payne, Simmons, and Cobb & Morris, in the original form in which they were imported into this State, and had not been distributed to purchasers within the State. The defendant, within due time, answered the plaintiff's complaint, and the case was placed on Calendar 1, for trial by jury. Before the Court convened, to wit: February 23, 1898, the defendant served upon the attorneys for the plaintiffs a notice of a motion to be heard by his Honor, Judge James Aldrich, at his chambers, for an order vacating the attachment in the said cause, upon the ground that the said liquors attached were exempt from sale under the dispensary law of this State by any officer of the Court, under mesne or final process, and, therefore, exempt from attachment. The motion was heard by his Honor, Judge James Aldrich. The attorney for the defendant stated that he would rest the entire motion upon the ground above stated. Argument was, therefore, directed to the issue thus made.

After argument, the presiding Judge overruled the motion

by the following order: "This is a motion by defendant to dissolve the attachment herein, upon several grounds, all of which were abandoned at the hearing, except the one that the property attached was intoxicating liquors, which the sheriff, under the dispensary law, had not the authority to sell, and, therefore, could not attach. The goods were imported by the defendants to be sold under the practice and custom of original package houses. They were in the hands of the defendants' agents for the purpose stated, when attached. The sheriff is the legally constituted and appointed agent of the judgment debtor, and the purchaser from the sheriff takes his title, not mediately, but immediately, from the judgment debtor. *McKnight* v. *Gordon*, 13 Rich. Eq., 222. And all kinds of personal property which can be made the subject of a voluntary transfer of title by the debtor, can, by execution, be made the subject of an involuntary transfer. Freeman on Executions, sec. 110. If the defendant could sell the liquor by her agents, then the sheriff, under the circumstances, is her legally constituted agent, and, as such, can sell the same. The motion to dissolve the attachment is refused."

The defendant appealed from said order upon three exceptions, but it will not be necessary to consider them in detail, as they raise practically the single question whether the said property could be attached. Section 1 of the dispensary act, 22 Stat., 123, of force at the time of said attachment, contains the following provisions: "That the manufacture, sale, barter or exchange, receipt or acceptance, for unlawful use, delivery, storing and keeping in possession, within this State, of any spirituous, malt, vinous, fermented, brewed (whether lager or rice beer), or other liquor, any compound or mixture thereof, by whatever name called or known, which contains alcohol and is used as a beverage, by any person, firm or corporation; the transportation, removal, the taking from the depot or other place by consignee or other person, or the payment of freight or express or other charges by any person, firm, association or

corporation upon any spirituous, malt, vinous, fermented, brewed (whether lager, rice or other beer), or other liquor, or any compound or mixture thereof, by whatever name called or known, which contains alcohol and is used as a beverage, except as is hereinafter provided, is hereby prohibited under a penalty of not less than three nor more than twelve months at hard labor in the state penitentiary, or pay a fine of not less than $100 nor more than $500, or both fine and imprisionment, in the discretion of the Court, for each offense." It is not contended that there was a compliance with the requirements of the dispensary act so as to make the possession of said liquors lawful under said act; on the contrary, it is not denied that the purpose for which the said liquors were shipped into this State has been declared by the Supreme Court of the United States, in the case of *Vance* v. *Vandercook*, 18 Sup. Ct., 674, to be unlawful. Section 25 is as follows: "That any of the liquors set forth in section 1 of this act, which are contraband, may be seized and taken without warrant by any constable, sheriff or policeman, while in transit or after arrival, whether in possession of a common carrier, depot agent, express agent, private person, firm, corporation or association, and reported to the state commissioner at once, who shall dispose of the same as hereinafter provided * * *" Section 26 is as follows: "That the possession of said illicit liquors is hereby prohibited and declared unlawful, and any obligation, note or indebtedness contracted in their sale or transportation is declared to be absolutely null and void, nor shall any action or suit for the recovery of the same be entertained in any Court in this State." Section 33 contains the following provision: "All liquors in this State, except dispensary liquors, and those passing through this State consigned to points beyond this State, shall be deemed contraband, and may be seized in transit without warrant." The following provision is contained in section 35: "All alcoholic liquors, other than domestic wine, which do not have on the packages in which they are contained, the label and certificates

going to show that they have been tested by the chemist, and purchased from a state officer authorized to sell them, are hereby declared contraband, and on seizure will be forfeited to the State, as provided in section 31: *Provided,* That this section shall not apply to liquor held by the owners of registered stills in bonded warehouses. Persons having liquor which they wish to keep for their own use, may throw the protection of the law around the same by furnishing an inventory of the quantity and kinds to the state commissioner and applying for certificates to affix thereto."

We have quoted from these sections of the act for the purpose of showing that the use and possession of the liquor, under the circumstances set forth in the case, are forbidden by law as against public policy; that it was contraband; and that the intention of the statute was to destroy the right of property therein by subjecting it to seizure without warrant and to forfeiture to the State. The statute, in its efforts to prevent the mischief arising from the illegal use and possession, as aforesaid, has even gone to the extent of declaring null and void all obligations contracted in the sale thereof. For the Court to allow the use of its process in making the liquor liable to the payment of debts would be to lend its aid in thwarting the provisions of the act, and deprive the State of its rights arising from forfeiture. This distinction between statutes merely prohibiting the sale of liquor, and those that destroy the right of property therein, and declare the ownership illegal under penalty, is clearly pointed out by Mr. Justice Little, who, in delivering the opinion of the Court, in the case of *Fears* v. *State* (Ga.), 29 S. E. R., 463, uses the following language: "The object of this act was, as its caption recites, to prevent the evils of intemperance; and the means of preventing such evils was to prohibit the selling or giving away of the liquors enumerated. Further than this the act does not go. It is a valid and constitutional act of the General Assembly, and is entitled to have full force and effect; and in construing such acts, the spirit as well as the letter of the law will be

regarded to accomplish the object sought. It will be noted, however, that the inhibition under this act extends only to the sale, barter, furnishing or giving away of spirituous liquors. There is no attempt under the act to destroy the right of property in liquors, nor is there anything deducible from any of its provisions which declare the ownership of such liquors illegal. The mandate of the law is that they shall not be sold; they shall not be given away; they shall not be bartered; they shall not be furnished. Under the provisions of the act, they may be held, kept, owned, and used in counties where its provisions apply. If they can be so kept and owned, then they are property. Property, in its appropriate sense, means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others. * * * In all of the States, so far as we know, police control over the sale of intoxicating liquors is exercised, because of the evils attending their misuse or excessive use; and, while this is true, it does not follow that they are incapable of being lawfully held in possession, or that they are not subjects over which ownership can be exercised. On the contrary, such liquors, when not held under circumstances which constitute a nuisance or a penal offense, are entitled to protection, as other property. *Brown* v. *Perkins*, 12 Gray, 89." The attachment proceedings can not be made effective except by a *sale* of the liquors, and a sale in this manner is not permitted by the statute, but a *penalty* is imposed for such infraction of the law. So that, if the Court should order a sale under these circumstances, it would be a violation of the law, which not only *prohibits* such act, but imposes a penalty for so doing. *Fairly* v. *Wappoo Mills*, 44 S. C., 254. It was well said in *Bank* v. *Owens*, 2 Pet., 539: "No Court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country. How can they, then, become auxiliary to the consummation of violations of law? * * * There

can be no civil right when there can be no legal remedy, and there can be no legal remedy for that which is itself illegal."

There was, therefore, error on the part of the Circuit Judge in refusing to dissolve the attachment, and it is the judgment of this Court, that the order appealed from be reversed.

MR. JUSTICE JONES, *concurring.* I concur in reversing the judgment of the Circuit Court, on the ground that intoxicating liquors are, in this State, exempt from attachment for debt. Section 256 of the Code of Procedure, relating to attachments, provides that "all property in this State of such defendant, except that exempt from attachment by the Constitution, shall be liable to be attached and levied upon and sold to satisfy the judgment and execution." The exemption here referred to is, doubtless, the homestead exemption. But the dispensary law, a later enactment, prohibits, under penalty, the sale of intoxicating liquors by anybody and in any way, except as provided for in that act; and it is nowhere in that or any subsequent act provided that an officer may sell intoxicating liquors under attachment or execution. The terms of the dispensary act are broad enough to forbid public sale by auction as well as private sales. Since the object of an attachment is to hold for sale, under the judgment that may be obtained, and since the public sale of intoxicating liquors under mesne or final process is clearly within the prohibition of the dispensary law, by necessary implication, intoxicating liquors are exempt from attachment for debt. I am not prepared to rest this case to any extent on the ground that the dispensary law destroys the owner's right of property in intoxicating liquors, even where kept for an unlawful purpose. Until actual confiscation by the State, the "owner" has property therein, but subject to law. Otherwise, such property could not be the subject of larceny. The owner could not maintain an action to recover the same against a trespasser. Nor could he claim the restoration of the same by dissolution of

an attachment.   The defendant's right to a dissolution of the attachment rests on the *trespass* of the sheriff in seizing property exempt from attachment.   The following authorities sustain the judgment of the Court: Drake on Attachment, sec. 244c; Shinn on Attachment, sec. 28; Black on Intoxicating Liquors, sec. 246; *Kiff* v. *Old Colony R. R. Co.*, 117 Mass., 591; s. c., 19 Am. Rep., 430; which follows *Ingalls* v. *Baker,* 13 Allen, 449; *Barron* v. *Arnold,* 16 R. I., 22; *Nichols* v. *Valentine,* 36 Me., 322.