### JARO v. HOLSTEIN.

1. PARTY—CLAIM AND DELIVERY.—In action in claim and delivery for mules and wagon seized by State constable in hauling liquors, the State is not a necessary party.

2. EVIDENCE—MEMORANDUM.—A bill made out by a wholesale liquor dealer purporting to show that it was bought for personal use, is admissible for what it is worth in such action.

3. INTERSTATE COMMERCE—DISPENSARY LAW.—Liquor bought in another State for another and transported by a private party from a point without the State to be delivered to a party within the State with the knowledge that the purchaser or consignee will use it for illicit traffic, may be seized by State constable while in transit in possession of party carrying it.

Before ERNEST MOORE, special Judge, Abbeville, November, 1904. Reversed.

Action by Martin G. Jaro against J. C. Holstein. From judgment for plaintiff, defendant appeals.

*Mr. Wm. N. Graydon,* for appellant, cites: *The liquors were exempt from seizure until they arrived at destination:* 67 S. C., 402; 55 S. C., 238; 196 U. S., 133. *Even if intended for an unlawful use:* Pabst Brewing Co. v. Crenshaw, 25 Sup. Ct. R.; American Express Co. v. Iowa, 25 Sup. Ct. R.; 70 S. C., 61. *State was real party:* 68 S. C., 419.

*Mr. Wm. P. Greene,* contra, cites: *Allegation as to in-formation of illegal use properly stricken out:* Crim. Code, 594; 21 Ency., 228. · *State not necessary party:* 58 S. C., 99. *Liquors cannot be held contraband until arrival at destina-tion:* 67 S. C., 493; 55 S. C., 244; 70 S. C., 61. *The bill of liquors was pars rei gestae:* 24 Ency., 688.

December 2, 1905. The opinion of the Court was de-livered by

MR. JUSTICE JONES. In this action of claim and delivery the plaintiff recovered judgment for the possession of two mules and a wagon, and thirty-five dollars damages. The appeal relates mainly to the following defense set up in the defendant's answer: "That he is a State constable, whose duty it is to look after the enforcement of the dispensary law of this State. That having information that the defendant was violating the dispensary law of the State by hauling and handling contraband liquor both in the day and night time, this defendant was on the lookout for plaintiff, and on the night of 18th of August, 1904, near Clark's Hill, in Edge-field County, in the said State of South Carolina, this defend-ant found the said Martin G. Jaro with three gallons of contraband liquor in a wagon, pulled by two mules, and under and by virtue of the laws of this State, this defendant seized said whiskey and the wagon and team so unlawfully engaged, and reported the same to the State authorities, had the same appraised and advertised, and was preparing to carry out the law, when they were taken from this defend-ant's possession by the proceedings herein."

The Circuit Judge struck out of the answer as irrelevant the words: "That having information that the plaintiff was violating the dispensary law of this State by hauling and handling contraband liquor, both in the day and night time." The appellant very properly made no effort in argument to sustain the exception as to this order. The allegation was clearly irrelevant. The issue was whether plaintiff was actu-

ally hauling contraband liquor so as to forfeit the mules and wagon—not whether defendant had information that he was doing so.

The defendant's next proposition that the State was a necessary party has been settled against his view by a number of cases. *Scott* v. *Donald,* 165 U. S., 58, 41 L. ed., 632; *In re Tyler,* 149 U. S., 164, 37 L. ed., 689; *Pennoyer* v. *McConnaughy,* 140 U. S., 20, 35 L. ed., 363.

The bill made out by the wholesale dealers from whom the liquor was purchased purporting to show that it was bought for the personal use of. the individuals therein mentioned, was admissible in evidence for what it was worth. "A memorandum made at the time of negotiating a verbal contract and relating to its terms may be admitted as *pars rei gestae.*" 24 Am. & E. Ency. Law, 688; 1 Elliott on Evidence, secs. 556 and 537.

All the other nine exceptions relating to the admissibility of evidence and the charge to the jury may be disposed of by considering the fourth and ninth exceptions, which are as follows:

"IV. Because his Honor erred in refusing to allow defendant's attorney to ask the plaintiff, Jaro, when he was on the stand, if he did not know that the man Stone, at Parksville, was recognized in the community as a liquor seller, and in ruling and holding that it made no difference whether the liquor was intended for illegal sale or not, and in further holding that the fact of it being purchased for the purpose of illegal resale could not make any difference; whereas, it is respectfully submitted that if a party brings liquor into the State, knowing that it is intended for an illegal purpose, then he cannot protect himself on the ground that he is engaged in interstate commerce, and his Honor erred in holding to the contrary.

"IX. Because his Honor erred in charging the jury, at the request of the plaintiff, the following proposition: '2d. That a party has a right to buy liquors outside of the State of

South Carolina and transport them to any point within the
State of South Carolina, and if he buys them and while they
are being transported to their destination in the State of
South Carolina, even though such liquors are intended for an
unlawful use, they cannot be seized until they reach their
destination, neither has an officer of the State the right to
seize any conveyance, horses, mules or harness accompanying
the same before they reach their destination.' It is submit-
ted that said charge is erroneous, for the reason that if a
party intends an illegal use of whiskey, he is *particeps crimi-
nis,* and is not entitled to the protection of the law, which
only applies to liquors brought into the State for a legal use."

It is contended that the ruling and charge of the Court is
sustained by the cases of *Rhodes* v. *Iowa,* 170 U. S., 412;
*State* v. *Holleyman,* 55 S. C., 207; *Smith* v. *Lafar,* 67 S. C.,
493: *State* v. *Moody,* 70 S. C., 56.

In the case of *Rhodes* v. *Iowa, supra,* there was a shipment
of intoxicating liquors into Iowa from another State, and the
agent of the railroad carrier in Iowa, when the merchandise
reached its destination, moved the package from the car in
which it had been transported to the freight depot, prepara-
tory to delivery to the consignee. It was claimed that this
removal by the carrier's agent was in violation of the Iowa
statute, on the ground that, under the Wilson act of Con-
gress (1890), the police power of the State operated upon
the property the moment it passed the boundary line of the
State. The Court held that the subject of any interstate
shipment is protected by the interstate commerce power until
such shipment is consummated by the arrival of the goods
at their destination and their delivery to the consignee. But
it should be noted that there was no suggestion in that case
that the consignee ordered the liquors for any unlawful pur-
pose and that the carrier was aiding and abetting in the
attempt to violate the State law.

The case of *Vance* v. *Vandercook,* 170 U. S., 438, upholds
the right of a citizen of South Carolina to order from
another State for his personal use intoxicating liquors to be

delivered in South Carolina. All the decisions of the U. S. Supreme Court construing the Wilson act, subject intoxicating liquors to the police control of a State after complete delivery to the purchaser or consignee, but it has not been held, so far as we can ascertain, that the police power of a State is powerless to reach the case of a carrier, who is also the purchaser of intoxicating liquors for himself and others, and is transporting the same with knowledge that such liquors are intended for illicit sale.

The case of *State* v. *Holleyman* holds that intoxicating liquors purchased in another State for the use of the purchaser himself, and transported by him in his own private conveyance across the State line towards his home, have not arrived within the State, within the meaning of the Wilson act of Congress, so as to be contraband, while in the course of transportation between the State boundary and the home of the purchaser. The majority of the Supreme Court, *en banc,* held that such a transportation was within the protection of interstate commerce, but the decision does not go to the extent of holding that a party in actual possession of intoxicating liquors bought for himself and others, and procured for illicit traffic, is beyond the police power of a State, merely because such liquors are in course of transportation by the purchaser in his own private vehicle from a point without to a point within the State.

The case of *Smith* v. *Lafar* merely decides that liquors shipped from one State into another by express are in transit while in possession of the express company, and an action lies against a dispensary constable, individually, for wilful and malicious seizure of liquor in transit, shipped for personal use. In that case, the Court used the following language: "Liquor purchased in another State and shipped to the purchaser in this State is not contraband, being protected as an article of interstate commerce until it is delivered to the purchaser. *Rhodes* v. *Iowa,* 170 U. S., 412; *State* v. *Holleyman,* 55 S. C., 244. The fact that the purchaser to whom it is consigned is engaged in the illicit sale of liquor

and purchases it for the purpose of resale cannot make any difference; the liquor is none the less an article of interstate commerce, and cannot be lawfully seized until delivered to the consignee." This language, however, must be construed in the light of the facts of that case, as should be done in every case, otherwise the general language of the Court may lead to inferences and conclusions not intended by the Court or warranted by the particular case. That case involved an interstate shipment founded on an interstate contract whereby the duty of the carrier required a delivery to the consignee at the termination of the shipment. Manifestly interstate commerce protected the liquor until delivery to the consignee. The mere fact that the consignee intended it for illicit sale, of course, could not affect the carrier's duty to deliver in pursuance of the interstate contract. What would be the law if the carrier was aiding and abetting the illicit traffic by making purchases and transporting liquor for such purposes, is a question not involved and not considered in *Smith* v. *Lafar*.

In the present case, it appears that the plaintiff, whose property was seized, was both purchaser and carrier, and the case sought to be submitted to the jury in justification of the seizure was that the carrier, with knowledge of the purpose to sell the liquor unlawfully, was by the act of transportation and purchase aiding and abetting in the attempt to violate the State law.

The case of *State* v. *Moody* does not sustain the ruling of the Circuit Court, but, on the contrary, is in conflict therewith. In that case intoxicating liquors had been purchased by the defendants for themselves and others at Dockery's distillery, in North Carolina, and were being transported through Marlboro County for delivery to parties living in Darlington County. They were arrested in Marlboro County while engaged in transporting said liquors, and were indicted for such offense. The Judge charged the jury, in substance, that while one may lawfully transport liquor into this State for his own and another's personal use, yet that if

it was being transported for an unlawful purpose, it was liable to seizure and the party liable to arrest. The above charge was approved by this Court.

In determining the question whether a particular State statute is invalid as an attempted exercise of police power because it conflicts with interstate commerce, it must be remembered that the U. S. Supreme Court has announced the rule that State regulations, enacted in the exercise of the police power, are not void unless they directly interfere with or burden interstate commerce. Numerous cases may be cited to show that regulations may be valid notwithstanding they remotely or indirectly, or for a limited time or to a limited extent, affect interstate commerce. Examples may be found in the case of *Kennington* v. *Georgia*, 103 U. S., 299, which upheld a State statute making it a misdemeanor to run a freight train on the Sabbath, as applied to a freight train engaged in interstate commerce; in the case of *Lake Shore etc. R. R. Co.* v. *Ohio*, 19 Sp. Ct. Rep., 465, 173 U. S., 285, which upheld the statute of Ohio requiring regular passenger trains within that State to make daily certain stops each way at towns of over three thousand inhabitants, as applied to interstate passenger trains; in the recent case of *Pabst Brewing Company* v. *Crenshaw*, 25 Sp. Ct. Rep., 552, 198 U. S., 17, which upheld a statute of Missouri subjecting intoxicating liquors, arriving in the State, to inspection regulations, as no interference with interstate commerce because it operated to deter shipments into the State.

The prime object of the Federal commerce power is to protect the freedom of *legitimate* trade among the States. This great power is acknowledged to be paramount as to all matters not reserved to and inherent in the police power of the States, but it ought never to be so extended as to become an aid and shield for unlawful traffic. The police law of the State, which is designed to uproot illicit traffic in intoxicating liquors by seizure within this State of liquors intended for such traffic, does not materially or injuriously affect legitimate interstate commerce. It leaves wholly

unhampered the citizen's right to import for personal use, and not for sale, and subjects no innocent agent of interstate commerce to the penalty of law for discharging any proper duty of such agency.

We think that the principle announced in *Plumley* v. *Mass.,* 15 Sp. Ct. Rep., 154, 155 U. S., 461, is applicable here. In that case a statute of Massachusetts designed to prevent fraud and deception in the sale of imitation butter, as applied to oleomargarine brought into Massachusetts from other States, was upheld as not in violation of interstate commerce. Undoubtedly, oleomargarine was a legitimate article of interstate commerce, and under the case of *Leisy* v. *Hardin,* 135 U. S., 100, it would not be in violation of any valid State law to sell oleomargarine, as such, in the original package in which it was imported, as interstate commerce would protect it until sale in such package. The Court, however, proceeds to show that the doctrine of *Leisy* v. *Hardin* did not apply to the case then before the Court, which involved the right of a State to protect the public from deception and fraud in the sale of this food product. The Court said : "The Constitution of the United States does not secure to any one the privilege of defrauding the public. The deception against which the statute of Massachusetts is aimed is an offense against society, and the States are as competent to protect their people against such offenses or wrongs as they are to protect them against crimes or wrongs of a more serious character." Upon similar grounds we think that interstate commerce will not protect intoxicating liquors imported into this State for an unlawful purpose, if the importation is in such a way as to make the carrier an aider and abettor in the scheme to violate State laws. Under these views, the ruling and charge of the Court were erroneous.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.