7648

STATE v. MESSERVY.

1. EVIDENCE—CONVERSATION.—IN PROSECUTION for murder of a dis-
   pensary constable while making an arrest, conversation between a
   witness and defendant as to deceased searching his house sometime
   before the homicide is competent as tending to show defendant knew
   deceased was a constable.
2. CONSTABLES.—Section 1047, Code 1902, providing that constables shall
   file a bond with the clerk of the court and take certain oaths, does
   not apply to constables appointed by the governor under the dis-
   pensary act of 1907.
3. IBID.—HOMICIDE.—But if the law required a dispensary constable to
   give a bond and file an oath and he had not done so, but was
   exercising the duties of such office under a commission from the
   governor, one killing him in discharging the duties of the office
   would be only entitled to such defenses as he could interpose to the
   killing of an officer *de jure*.
4. EVIDENCE.—There being no issue as to the date of the homicide and
   defendant having stated it, it was not prejudicial to refuse to let
   him restate it, as Judge was not advised as to the purpose of
   repeating it except to show a special term of Court had been called
   to try this case.
5. CONTRADICTION.—A witness may be contradicted by a bystander as to
   a statement made by him to another.
6. INTERSTATE COMMERCE—LIQUORS.—An interstate shipment of alcohol
   in unbroken package is delivered, so as to be subject to State laws,
   when put in possession of the consignee by the carrier at its station.

Before DANTZLER, J., Colleton, Fall term, 1909.
Affirmed.

Indictment against J. W. Messervy for murder of C. P.
Fishburne. Defendant appeals from sentence on circuit.

*Messrs. Padgett, Lemacks & Moorer,* for appellant,
cite: *Evidence as to previous search by deceased incom-
petent:* 81 Miss., 374; 79 Ala., 29. *Provisions of law as
to constables:* Code, 1902, 1047; Crim. Code, 379; Act,
1907, 463; art. IV, sec. 17; Con., art. III, sec. 26; art. I,
sec. 29; Crim. Code, 591; Code, 1902, 1048, 582. *Con-
struction of the constable act:* 26 Ency., 598; 56 S. C.,

173; 33 S. C., 543. *Commission itself does not confer office:* 1 McC., 235; 2 N. & McC., 356; 3 Strob., 92; 7 Rich., 227; 8 S. C., 515; 14 S. C., 376; 29 Cyc., 1373. *Duties of constable cannot be performed by de facto officer:* 17 S. C., 8. *Alcohol not delivered until at home of consignee:* 55 S. C., 207, 247; 67 S. C., 493; 101 Pac., 115, 138, 275, 280; 57 Fed. R., 570; 99 Pac. R., 804; 88 N. E., 420; 135 U. S., 100; 170 U. S., 423, 438; 199 U. S., 501; 104 Fed., 258; 98 Pac., 228; 76 Fed., 554; 46 U. S., 574; 70 S. C., 56.

*Solicitor Peurifoy* and *Messrs. Howell & Gruber* and *Jas. E. Peurifoy,* contra.

*Messrs. Howell & Gruber,* cite: *Not necessary to show deceased gave bond:* Code, 1902, 1046, 1047; Acts, 1907, 477; 2 Spears, 121; 3 Strob., 94; 15 S. C., 155; 8 Ency., 787; 2 Ency., 865. *Interstate shipment is subject to State laws when delivered to consignee:* 17 Ency., 294; 170 U. S., 412, 438.

August 4, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The defendant at Fall term, 1909, was indicted for the murder of C. P. Fishburne, at Ravenel Station, in Colleton county, on July 6, 1909. The jury rendered a verdict for manslaughter and defendant was sentenced to twenty years imprisonment in the State penitentiary.

At the time of the homicide the deceased, Fishburne, was acting as a constable with a commission dated March 22, 1907, issued by Governor Ansel, under the dispensary law known as the Cary-Cothran Act. The defendant had just received from the railroad station agent at Ravenel a barrel containing about thirty gallons of alcohol and placed it in the wagon, and was about to drive off, when Fishburne seized the horse attached to the wagon and demanded surrender. Fishburne called to J. D. Altman, who was assisting him,

to come and hold the horse and let him take charge of the prisoner. The defendant gave this version of what then occurred:

"When he said, Mr. Altman, come and hold the horse and let me take charge of the prisoner, Mr. Altman started to hold the horse, and then I cut the horse, and when I cut the horse, Mr. Altman stopped, and I cut the horse four times, and each time I cut the horse to make it go, he tried to jerk the horse down and I continued to cut the horse four times; when I cut the horse Mr. Fishburne said if you won't surrender we will have to kill you, and he pulled his pistol and was going to shoot and I shot him."

The first and second exceptions assign error in admitting the testimony of E. E. Fowler, State's witness, as to a conversation between the witness and the defendant, Messervy, about six months previous to the homicide, relating to a search by deceased of defendant's house for contraband liquors.

The Court was correct in ruling the testimony admissible, as it tended to show that defendant had reason to know that Fishburne was acting as a dispensary constable.

Under exceptions 3, 4, 5, 6, 7, 8, 9, 17, 18, 19, 21, 22, 23, 24, 25, appellant contends that in addition to the commission by the Governor of Fishburne as constable under the Carey-Cothran Act of 1907, it was necessary to Fishburne's authority to act as such for him to comply with section 1047, Civil Code, which provides:

"When any person shall be elected or appointed to the office of constable, he shall repair to the clerk's office of the county, and, together with the evidence of his election or appointment, he shall lodge his bond, in the form prescribed by law in the penalty of five hundred dollars, with good sureties, not less than two nor more than five, to be approved in writing by the clerk; and, upon taking the oaths herein prescribed, such persons shall be entitled to a certificate from

the clerk that he has filed his bond and taken the requisite oaths, and shall thenceforth be regarded as a regularly qualified constable; nor shall any person not so qualified exercise the powers of a constable: provided, etc." The Court refused to allow testimony to show that this statute had not been complied with and refused to instruct the jury that Fishburne was bound to comply with the Statute before he could have authority to act as constable, and interfere with defendant if he was violating the dispensary law.

The Court further refused to charge that under section 379, Criminal Code, Fishburne was acting unlawfully and committing a misdemeanor if he attempted to exercise the duty of a constable without having given bond as required.

The requirement of section 1047, that constables shall take the oath of office and give bond, does not relate to constables commissioned by Governor under the Carey-Cothran Act, but to constables when chosen by the qualified electors or appointed by magistrates, as provided for in section 1046.

The appointment of dispensary constables is authorized by section 38 of the act of 1907, which declares: "It shall be the duty of the sheriffs and their deputies, magistrates, constables, rural police, city and town officials to enforce the provisions of this act. If they fail to do so, it is hereby made the duty of the Governor to enforce the same, and he is hereby authorized to appoint such deputies, constables and detectives as may be necessary, the salaries and expenses of such officers to be paid out of the profits of the dispensaries in counties wherein they may be established and out of the ordinary county funds in counties wherein they have not been established." We do not find in this statute any requirement that the deputies, constables and detectives authorized to be appointed by the Governor shall take the oath of office and give bond, as required in section 1047, *supra.*

We do not find in the Constitution any requirement that constables shall give bond. Art. III, sec. 26, does provide that all officers, before entering upon the duties of their respective offices, shall take the oath prescribed in the Constitution, and if this provision should be construed as relating to constables, deputies, and detectives specially appointed by the Governor to enforce the dispensary law, there was no attempt to show that such oath was not taken by Fishburne before some officer before appointment by the Governor.

The fact that ordinary constables have many duties to perform under various laws and that the duties of dispensary constables are limited to enforcement of the dispensary law alone, affords a reason why the legislature should fail to require dispensary constables to take the different oaths referred to in sections 582 and 1047. There is no reason for requiring dispensary constables to take the oath to enforce the laws against gaming and keeping gaming tables, and to enforce the penalties prescribed against duelling required of constables elected or appointed under section 1046.

Section 584 merely prescribes the form of the bond which shall be given by officers who are required by law to give bond, but dispensary constables, under the Carey-Cothran Act, are not by that act required to give bond.

Under the former dispensary law, section 661, State constables were required to give bond to the State in the sum of five hundred dollars, with sureties to be approved by the Attorney General, and even if it should be held that this legislation is not inconsistent with the act of 1907, and is not repealed thereby, still there was no error in the rulings to which exceptions are taken, as the question presented to the Court was whether Fishburne should have complied with section 1047 as prerequisite to his qualification to act as constable in enforcing the dispensary law.

But if it be true that a dispensary constable appointed by the Governor under the act of 1907 should take the prescribed oaths of office, and file a bond for the faithful performance of his duty, and that Fishburne did not take such oaths and file such bond, still, if he was acting as constable in good faith under the commission of the Governor and the seal of the State, as appears in this case, he was at least constable *de facto*. *State* v. *Hill,* 2 Speer., 50; *McBee* v. *Hoke,* 2 Speer., 138; *Kotman* v. *Ayer,* 3 Strob., 92; *State* v. *Hopkins,* 15 S. C., 156. *Tinsley* v. *Kirby,* 17 S. C., 1, cited for appellant, is not to the contrary, as it recognizes the general rule as to *de facto* officers and merely holds that there can not be a *de facto* officer where there could be no *de jure* officer.

"To constitute an officer *de facto* he must have a presumptive or apparent right to exercise the office, resulting from either full and peaceable possession of the powers of such office, or reasonable color of title, with actual use of the office."

*Ex parte Norris,* 8 S. C., 473. Note to *Hildreth* v. *McIntire,* 19 Am. Dec., 63. Public policy requires that the authority of one in fact holding a public office under color of legal title shall not be questioned collaterally. One who resists a *de facto* officer and slays him while in the discharge of his apparent duty has only such defense as would exist were the person slain an officer *de jure*. 1 Bishop Crim. Law, sec. 465, 29 Cyc., 1395. *State* v. *Dierberger,* 96 Mo., 666, 9 Am. St. Rep., 380.

It is contended under the 10th exception that the presiding Judge refused to allow the prisoner to testify as to when the homicide occurred.

As the defendant had already testified that the homicide was committed on the evening of July 6th, 1909, and there was no issue on this point, he was not prejudiced. The

Court was not advised that there was any purpose in repeating testimony on this point, except possibly to show that a special session of the Court had been called to try the case soon after the homicide, a wholly irrelevant matter.

There was no error as alleged in the 12th exception, in allowing T. J. Blanchard, witness for the State, to contradict defendant's witness, John Brown, as to a statement made by Brown to Murray concerning the homicide.

Proper foundation had been laid by advertising the witness, Brown, as to the time, place and person to whom the statement was alleged to have been made. While Blanchard was not the person to whom the statement was made, he was present and heard it, hence his testimony was supported by the foundations laid for the introduction of that statement.

The 13th and 14th exceptions assign error in refusing to instruct the jury that if the alcohol was intended for unlawful use the deceased had no right to seize it, or the horse and wagon, or to arrest defendant until the shipment arrived at the home of the defendant, if it was in unbroken package, said alcohol being an article of interstate shipment.

The alcohol having been completely delivered to the consignee and owner at the point of its destination as an interstate shipment before the attempt to seize it, it was no longer protected as an article of interstate commerce, if it was held for unlawful use. *State* v. *Moody,* 70 S. C., 56, 49 S. E., 8; *Jaro* v. *Holstein,* 73 S. C., 112, 52 S. E., 870; *State* v. *Pope,* 79 S. C., 90, 60 S. E., 234. *State* v. *Holleyman,* 55 S. C., 207, 31 S. E., 362, does not support appellant's contention, as the liquor there was being transported for lawful use.

The remaining exceptions were not argued by counsel for appellant and are either immaterial or controlled by the rulings announced.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY *concurs in the result.*