9543

CHARLESTON & W. C. RY. CO. v. GOSNELL *ET AL.*

(90 S. E. 264.)

1. COMMERCE—INTOXICATING LIQUORS—INTERSTATE COMMERCE.—Interstate shipments of intoxicating liquor consigned to the shipper with order to notify were intended by the party to be notified for unlawful use. The shipments were held by the carrier for some time pending directions by the party notified, who was allowed to determine time of delivery. *Held* that, notwithstanding the interstate character of the shipments, and rulings that under the Wilson Act (act August 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St 1913, sec. 8738]), liquors transported from one State to another do not lose

their character as an interstate shipment until arrival at their destination and delivery to the consignee, the liquors became subject to the local laws upon retention by the railroad company for an unreasonable time; it being deemed on grounds of public policy that there was a constructive delivery to the person notified.

2. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.—Errors not prejudicial and which could not reasonably be supposed to have affected the result are no ground for reversal.

Before MEMMINGER, J., Greenville, October, 1915.   Affirmed.

Action by the Charleston & Western Carolina Railway Company against Reuben Gosnell, Corning & Co. and others.   From a judgment for the first named . defendant, plaintiff and others of the defendants appeal.   Affirmed.

This is an action of claim and delivery and was commenced on the 14th day of December, 1914, to recover possession of certain liquors described in the complaint, which were seized by the defendant, Reuben Gosnell.   The complaint contains three causes of action, as the respective consignors and the parties to be notified of the shipments were different.

The defendant, Gosnell, denied that the seizure of the liquors was unlawful, and interposed two defenses, the first of which is as follows:

"That on November 24, 1914, this defendant, being informed that the liquors described in the complaint were illegally stored in a car of plaintiff's, after same had arrived at their destination, and a reasonable time for the delivery thereof had elapsed, and that deliveries were being illegally made from said car, from time to time, to consignees, who are all notorious violators of the liquor laws of the State, obtained from Samuel Stradley, Esq., a duly · appointed magistrate for Greenville county, legal process, under and by virtue of which he made search of plaintiff's premises, and seized and took possession of the liquors described in the

complaint, stored in said car as aforesaid, and that in so doing he acted under legal process, issued by a Court of competent jurisdiction, and is entitled, under the laws of this State, to hold possession of said liquors."

The second defense is as follows:

"That upon the arrival of the liquors described in the complaint plaintiff, as the defendant is informed and believes, duly notified consignees thereof, and thereafter unloaded said shipments from the cars in which they had been transported, transferred them to a local car in plaintiff's railroad yard in the city of Greenville, placed on said car a local seal, and from time to time thereafter made delivery to consignees from shipments contained in said car; that said liquors had arrived at point of destination before seizure by this defendant; the consignees had been duly notified of their arrival, and, after such notification, permitted them to remain in car of carrier, who held them for an unreasonable length of time; that as to said shipments plaintiff, as this defendant is informed and believes, had, before the seizure of said liquors, ceased to hold them as a carrier,. and at such time held them as a warehouseman; that said liquors were purchased for an unlawful purpose, and that plaintiffs, by their conduct as above set forth, aided and abetted and assisted the various consignees in carrying out said unlawful purpose."

The following statement appears in the record, as to the shipment by the defendant, Corning & Co., to the defendant, Tom Harrison:

"On November 9, 1914, Corning & Co., at Peoria, Ill., shipped 25 cases of whiskey, consigned to themselves at Greenville, S. C., order notify Tom Harrison. The shipment was delivered to the Charleston & Western Carolina Railway Company by the Georgia Railroad Company, a connecting carrier, on November 17, 1914, and arrived at destination on November 20, 1914, four days before the seizure on November 24. The party to be notified was

mailed written notice that the shipment had arrived at the depot. The shippers drew a draft upon Tom Harrison for the invoice price of the liquor, $153.25, and attached same to the bill of lading, forwarding through regular commercial channels for collection. Tom Harrison did not take up the draft with bill of lading, and did not pay the freight, $15.59, which was 'Collect.' Between the arrival of the shipment at the depot and the seizure by the defendant, Gosnell, the agent of the Charleston & Western Carolina Railway Company (acting upon the advice of the local counsel of that railway company at Greenville), as he states, for safekeeping, stored the liquor in a box car standing upon a sidetrack near the warehouse door, where it was seized by the defendant, Gosnell, under a search warrant issued by Magistrate Stradley on November 24, 1914, charging that the liquor was being stored in the car by 'Tom Harrison, consignee.' "

Similar statements appear in the record as to the shipments by the defendants, Heyman & Baron and H. C. Myers & Co., to the defendants, W. J. Goodlett and D. F. Belcher, respectively.

The following shipments were made by Heyman & Baron, of Augusta, Ga., consigned to themselves, with instructions to notify W. J. Goodlett: (1) Five cases whiskey shipped September 22, 1914, arrived September 28, 1914; (2) fifteen cases whiskey shipped September 25, 1914, arrived September 28, 1914; (3) five cases whiskey shipped September 29, 1914, arrived October 1, 1914; (4) five cases whiskey shipped October 6, 1914, arrived October 7, 1914. These shipments were seized November 25, 1914.

The following shipments were by H. C. Myers Company from New York, consigned to themselves, with instructions to notify D. F. Belcher: (1) One case whiskey shipped July 9, 1914, arrived July 16, 1914; (2) one case whiskey shipped July 9, 1914, arrived July 16, 1914. These ship-

ments were seized August 13, 1914.   All the bills of lading were marked, "For personal use."

H. C. Harvley testified as follows in behalf of the plaintiff:

"Agent of Charleston & Western Carolina Railway Company at Greenville continuously since March 3, 1913.   On November 24, 1914, Reuben Gosnell, chief of rural police, searched for liquor in the warehouse, and in a car standing on sidetrack near warehouse.   Seized 45 cases of whiskey and 15 or 18 barrels of beer.   The liquor was placed in the car for safekeeping, to keep it from being stolen.   Had had trouble with losing whiskey; cases had been broken up, and sometimes an entire case would be stolen.   The liquor was in the car with other freight."

Cross-examination:

"We were using the car practically as a warehouse. Don't think there was any liquor in the warehouse.   The car was under a local seal of the Charleston & Western Carolina Railway Company.   Harrison and Goodlett received shipments probably every week on an average. Belcher not so often.   Q. What was the reputation of Harrison and Goodlett in reference to being engaged in the lawful sale of liquor?   * * * A. Their general reputation was that they were engaged in the unlawful sale of liquor. Harrison and Goodlett frequently got several shipments, at the same time, from the same party, covered by separate bills of lading.   When such shipments would come in that way, I would put them in the car.   When they would pay a draft attached to a bill of lading, covering a particular shipment, I would deliver that shipment to them.   It made no difference how often they came, or for how much they came, the liquor would be delivered to them, if they presented the bill of lading covering that particular shipment or those particular shipments.   It frequently happened that Harrison or Goodlett would send a bill of lading by someone, with an order on me to deliver to them, which I would honor, and

deliver the liquor accordingly.   On all order notify ship-
ments we promptly notify the party to be notified of the
receipt by us of the shipment.   This is done with both order
notify and straight shipments.   Storage would be charged
on shipments not called for.   I don't recollect an instance
where we charged storage against Harrison, Goodlett, or
Belcher.   In the car there were boxes which had been broken
into and some of the contents abstracted.   This was done
before arrival here.   It was not done by the intended con-
signees.   They knew absolutely nothing about it."

On cross-examination Tom Harrison declined to answer
questions as to his being engaged in the unlawful sale of
liquor, upon the ground that the answers might incriminate
him.   And, on the cross-examination, W. J. Goodlett testi-
fied :

"Had agency for near beer for Augusta Brewing Com-
pany.   Have been engaged in the liquor business in Green-
ville for several years.   Was so engaged in November,
1914.   I had a federal license, up to July, 1915, wholesale
and retail."

It was admitted as a fact that the storing of the liquor
in the box car was in consequence of advice given by T. P.
Cothran, Esq., local counsel of Charleston & Western Caro-
lina Railway Company at Greenville, to the agent, to protect
the same from theft in the warehouse.

Two motions were made for the direction of a verdict—
one by the plaintiff and the other by the defendant—but both
were refused.

The jury rendered a verdict in favor of the defendant,
Gosnell, and the plaintiff appealed.

*Messrs. Cothran, Dean & Cothran,* and *Mauldin & Tur-
ner,* for appellants.

*Messrs. Cothran, Dean & Cothran* cite: *As to whether an
"order notify" shipment of liquor, interstate in character,*

*intended by the party to be notified for unlawful use, subject to seizure under the laws of South Carolina, while in the custody of a common carrier, before actual or constructive delivery to the party for whom, upon certain conditions, it is designed:* 238 U. S. 62 and 199; 94 S. C. 444; 170 U. S. 412, 426; 32 C. C. A. 189; 223 U. S. 70; 196 U. S. 133; 206 U. S. 129; 214 U. S. 218; 199 U. S. 501; 203 U. S. 276; 67 S. C. 491; 73 S. C. 111. *As to remarks of Judge with reference to defendants' good faith:* 81 S. C. 374.

*Messrs. McCullough, Martin & Blythe,* for respondent, cite: *As to whether the liquor was exempt from seizure because protected as interstate commerce:* 236 U. S. 568, 571, 572; 206 U. S. 129; 73 S. C. 111; 94 S. C. 444; 238 U. S. 190. *As to error in allowing testimony as to the reputation of the parties to whom the liquor was shipped:* Crim. Code 1912, sec. 838. *Position of carrier:* 27 S. C. 1.

The Circuit Judge having been called to the aid of the Court:

October 14, 1916.

The opinion of the Court *en banc* was delivered by MR. CHIEF JUSTICE GARY.

There are numerous exceptions, but it will not be necessary to consider them in detail, as the appellant's attorneys state that the main question raised by them may thus be formulated:

"Is an 'order notify' shipment of liquor, interstate in character, intended by the party to be notified for unlawful use, subject to seizure under the laws of South Carolina, before actual or constructive delivery to the party for whom, upon certain conditions, it is designed?"

In the case of *Smith* v. *La Far,* 67 S. C. 491, 46 S. E. 332, it is said:

"Liquor purchased in another State and shipped to the purchaser in this State is not contraband, being protected as an article of interstate commerce until it is delivered to the purchaser. *Rhodes* v. *Iowa,* 170 U. S. 412 (18 Sup. Ct. 664, 42 L. Ed. 1088); *State* v. *Holleyman,* 55 S. C. 244, 31 S. E. 362 (33 S. E. 366, 45 L. R. A. 567). The fact that the purchaser to whom it is consigned is engaged in the illicit sale of liquor, and purchases it for the purpose of resale, can make no difference; the liquor is none the less an article of interstate commerce, and cannot be legally seized until it is delivered to the consignee."

The carrier, however, cannot claim the protection of the interstate commerce laws if it aids and abets the shipper or the consignee in evading the laws of the State against the sale of intoxicating liquors. The Court uses this language in the case of *Jaro* v. *Holstein,* 73 S. C. 111, 52 S. E. 870:

"The prime object of the federal commerce power is to protect the freedom of legitimate trade among the States. This great power is acknowledged to be paramount as to all matters not reserved to and inherent in the police powers of the States, but it ought never to be so extended as to become an aid and shield for unlawful traffic. The police law of the State, which is designed to uproot illicit traffic in intoxicating liquors by seizure within the State of liquors intended for such traffic, does not materially or injuriously affect legitimate interstate commerce. * * * Interstate commerce will not protect intoxicating liquors imported into this State for an unlawful purpose, if the importation is in such a way as to make the carrier an aider and abettor in the scheme to violate State laws."

This proposition is also sustained by the case of *Adams Express Co.* v. *Kentucky,* 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987, in which the Court says:

"We do not mean to intimate that an express company may not also be engaged in selling liquor in a State contrary to its laws, or that the fact that the consignee did not order

a shipment might not be evidence for a jury to consider upon the question whether the company was not, in addition to its express business, also selling liquor contrary to the statutes. It is enough to hold, as we do, that under the averments of this indictment such testimony is immaterial. It is, of course, a question of fact whether a carrier is confining itself strictly to its business as a carrier or participating in illegal sales. The consignor alone may be trying to evade the statute. He may forward the liquors in the expectation that the consignee will, when informed of their arrival, take and pay for them. So the fact that there is no previous order by the consignee may not be conclusive of the carrier's wrongdoing, but still it is entitled to consideration in determining that question."

In regard to the question of delivery, the Court uses the following language in the case of *Heymann* v. *Railway,* 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178, 7 Ann. Cas. 1130:

"Of course, we are not called upon in this case, and do not decide, if goods of the character referred to in the Wilson act, moving in interstate commerce, arrive at the point of destination, and after notice and full opportunity to receive them are designedly left in the hands of the carrier for an unreasonable time, that such conduct on the part of the consignee might not justify, if affirmatively alleged and proven, the holding that goods so dealt with have come under the operation of the Wilson act, because constructively delivered. We say we are not called upon to consider this question, for the reason that no facts are shown by the record justifying passing on such a proposition."

Subsequently, however, the question was decided in the case of *Kirmeyer* v. *Kansas,* 236 U. S. 568, 35 Sup Ct. 419, 59 L. Ed. 721, in which the Court used this language:

"The instant cause arose before passage of the act of Congress approved March 1, 1913 (37 Stat. 699, c. 90), known as the Webb-Kenyon bill; consequently neither its construction nor application is now involved; and what is

said herein, of course, has reference to conditions existing prior to that enactment.   Former opinions of this Court preclude further discussion of these propositions: Beer is a recognized article of commerce.   The right to send it from one State to another and the act of doing so are interstate commerce, the regulation whereof has been submitted to Congress; and a State law which denies such right or substantially interferes with or hampers the same is in conflict with the Constitution of the United States.   Transportation is not complete until delivery to the consignee or the expiration of a reasonable time therefor and prior thereto the provisions of the act of Congress approved August 8, 1890 (26 Stat. 313, c. 728)—the Wilson act—have no application."

It is within the province of the Court, and indeed, it is its duty, to render such an interpretation of the laws as will best subserve the ends of justice and the protection of the public, in so far as this may be done in accordance with well-established rules of construction.   This may be accomplished at one time by a liberal and an another time by a strict interpretation.   In construing the Wilson act the Supreme Court of the United States ruled that liquors transported from one State into another did not lose their character as an interstate shipment, and become subject to the laws of the State, until arrival at their destination and delivery to the consignee.   Many dealers in liquors took advantage of the opportunity to leave such shipments in the custody of the carrier for as long a time as they saw fit, whether reasonable or unreasonable, for the purpose of evading the laws of the State against the sale of intoxicating liquors.   The Federal Supreme Court, recognizing that it was injurious to the morals, the health and welfare of the public for liquors to remain in the hands of the carrier for a length of time, limited only by the action of the dealer in supplying his customers, interpreted the word "delivery" to include not only an actual transfer of the liquors to the consignee, but likewise a constructive delivery, from the fact that they had

remained in the custody of the carrier an unreasonable time after arrival at their destination. The proposition for which the appellant contends would defeat this construction. The liquors were consigned to the shipper, but it was never contemplated that they were to be delivered to him, but it was the expectation of the parties that the one who was to be notified would become the consignee. The consignor conferred upon him alone the power and authority of determining when the liquors should be delivered. He was the agent of the shipper to the extent of deciding when the liquors were to be removed, in so far as their delivery within a reasonable time was involved. The ruling that liquors were subject to the laws of the State, after they had remained a reasonable time in the hands of the carrier, was based upon public policy, which is paramount to the rights of private parties. *McConnell* v. *Kitchens,* 20 S. C. 430, 47 Am. Rep. 845; *Lanahan & Sons* v. *Bailey,* 53 S. C. 489, 31 S. E. 332, 42 L. R. A. 297, 69 Am. St. Rep. 884.

It would be against public policy for any one, even the carrier, to enter into a contract that the liquors should not be subject to the laws of the State after arrival at their destination and the expiration of a reasonable time thereafter, as such a contract would be inconsistent with the ruling adopted by the Federal Supreme Court hereinbefore mentioned. The consignors are presumed to know the law, and that it is against public policy for liquors to remain in the custody of the carrier after a reasonable time for their removal. The important fact to be determine in all these cases is whether the liquors were allowed to remain an unreasonable length of time, and not the fact as to which of the parties, as between themselves, was responsible for the failure to remove them. The question under consideration is not to be determined by principles regulating the relations between the consignor and consignee, but by the laws fixing the time within which the liquors shall become subject

to the laws of the State. The exceptions raising this question are overruled.

There are two other exceptions, but they cannot be sustained, for the reason that, if there was error, it was not prejudicial; as there is no reasonable ground for supposing that the result would have been different if the error had not been committed.

Affirmed.

MR. JUSTICE GAGE and CIRCUIT JUDGES MOORE, SEASE, RICE, BOWMAN, GARY, WILSON, PEURIFOY and SMITH concur in the opinion announced by the CHIEF JUSTICE.

MR. JUSTICE HYDRICK, *concurring*. Plaintiff brought this action of claim and delivery December 12, 1914, to recover from defendant, Gosnell, the possession of certain intoxicating liquors which had been seized by him under and by virtue of warrants duly issued by a magistrate and directed to him. The liquors seized were shipped in 1914, and were consigned by the several consignors to themselves, "order notify" the respective individuals named as defendants for whom intended, and in each case a draft for the purchase price was drawn on the person to be notified and forwarded from the bill of lading attached through regular commercial channels for collection, and plaintiff duly notified the intended consignees of the arrival of the respective shipments, which were as follows: Two by Myers & Co. from New York, N. Y., for defendant, Belcher, each a case of whiskey at $10, shipped July 9, arrived July 16, seized August 13; five by Heyman & Baron, from Augusta, Ga., for defendant, Goodlett, as follows: September 22, five cases of whiskey, $36; September 25, fifteen casks of beer, $150; September 29, five cases of whiskey, $36; October 6, five cases of whiskey, $45; October 6, five cases of whiskey, $49.50. These arrived from September 25 to October 7; and one by Corning & Co., from Peoria, Ill., for defendant,

Harrison, November 9, twenty-five cases of whiskey, $153.25, which arrived November 20. The Goodlett and Harrison shipments were seized November 24. Each shipment seized was marked, "For personal use," on bill of lading and box or cask containing the liquor, and the freight on each was prepaid, except that for Harrison, which was $15:59, "Collect." The seizures were made while the liquor was in plaintiff's possession, having been stored in its warehouse awaiting delivery, to the respective persons for whom it was intended.

The undisputed evidence shows that each of the individual defendants, Belcher, Goodlett and Harrison, intended to use the liquor shipped to him in violation of the law of this State. Each had a license from the federal government to sell intoxicating liquors, and by section 838 of the Criminal Code the possession of such license is made *prima facie* evidence that the holder thereof was engaged in selling such liquors in violation of the State's laws. There was no evidence to rebut the *prima facie* case so made against each of them, but much to corroborate it.

It will be observed that these liquors were all shipped from other States and transported into this State in 1914, after the passage of the act of Congress of March 1, 1913, known as the Webb-Kenyon act (act March 1, 1913, c. 90, 37 Stat. 699 [U. S. Comp. St. 1913, sec. 8739]), which provides, in substance:

"That the shipment or transportation of any intoxicating liquor from one State into another, which said liquor is intended by any person interested therein to be received, possessed, sold or in any manner used in violation of any law of such State, is prohibited."

As it conclusively appears that these liquors were intended to be received, possessed, sold and used in violation of the law of this State, their shipment and transportation into this State were prohibited by the act of Congress above mentioned, which divested them of their interstate character.

They were not therefore entitled to the protection which before the passage of that act had been afforded to such liquors, as lawful subjects of commerce between the States, under the commerce clause of the Federal Constitution giving Congress the power to regulate commerce. It follows that the transactions involved in this passage of the act of March 1, 1913, and also that the decisions of this Court and those of the Supreme Court of the United States which interpreted and applied the law as it then stood to commerce in such liquors are not entirely applicable to the transactions now being considered; for, as they occurred after the Webb-Kenyon act became effective, they are subject to its provisions, and must be solved under it. Against this conclusion the decision of this Court in *Atkinson* v. *Express Co.*, 94 S. C. 444, 78 S. E. 516, 48 L. R. A. (N. S.) 349, is invoked. There are some expressions in the opinion of the Court in that case which favor the contention of appellant that State legislation after the passage of the Webb-Kenyon act was necessary to make that act applicable to the shipment or transportation of liquor into the State subsequent to its passage. But there are several answers to that contention. The first is that the language quoted from the opinion in that case, which is relied upon by appellant, went further than was necessary to the decision of the question before the Court. The passage quoted is as follows:

"It was not the intention of the Webb act to interfere with the policy of the State in regard to the importation of liquors, but merely to provide that the enforcement of a State statute would not be interfered with or hampered by the interstate commerce law. In other words, the act in this respect is passive, while it is incumbent on the States to enact legislation of an active nature if they are desirous of prohibiting the importation of liquors for personal use *or other purposes.* (Italics added.) But, even if Congress had undertaken to give validity to an unconstitutional State statute, it would have been beyond its powers. While the

7—S. C.—106

legislature cannot pass an act validating the provisions of the dispensary statute, which we have declared to be unconstitutional, so as to give it a retroactive effect, it nevertheless has the power to adopt a statute with similar provisions, having a prospective effect prohibiting alcoholic liquors from being imported into this State."

The case then before the Court involved nothing more than Atkinson's right to import liquor admittedly for his personal use. Hence the words "or other purposes" italicized in the excerpt above quoted were clearly *obiter,* for the right to import for an unlawful purpose was not involved. In using the words "or other purpose" the Court evidently had in mind only a lawful purpose. Certainly the Court did not intend to hold, nor is such intention reasonably inferable from the language used, that any person in the State had the right to import liquor for the purpose of selling it. If that were true, the numerous convictions for storing, transporting and selling such liquors that have been sustained since that time were all wrong. Furthermore, it was not necessary in the Atkinson case to decide anything relative to the necessity of subsequent State legislation to make the Webb-Kenyon act effective. For, as the opinion clearly shows, under the law as it stood prior to the Webb-Kenyon act, it was lawful for any person in the State to import liquor for his personal use, because the Supreme Court of the United States has held, in the cases cited and quoted from in the opinion, that the provision of our dispensary law prohibiting importation for personal use was void and ineffective in so far as it was attempted to make it applicable to interstate commerce, on the ground that it was unlawful discrimination against the products of other States which were recognized by the law of this State as being subjects of lawful commerce, as the State itself was then engaged in the sale of them through the dispensaries for profit.

When the Atkinson case was decided, in 1914, the State was still engaged in selling such liquors for profit through

dispensaries; hence the same unlawful discrimination still existed, and that was all that was necessary to give Atkinson, or any other person in the State, the right to import such liquors for a purpose recognized by the State law to be lawful. And as the State, by virtue of the decisions of the Federal Supreme Court, was compelled to recognize the importation of such liquors for personal use to be lawful so long as it was engaged in selling them for profit, the Webb-Kenyon act did not apply; because by its terms it prohibits shipment or transportation of such liquor only when it is to be received, possessed, sold or used in violation of a law of the State. Of course, that means a valid law. It was not the intention of Congress to enable the State to enforce a law making an unlawful discrimination in what was recognized to be lawful subjects of interstate commerce. But the Supreme Court did not hold that liquors could be lawfully sold in the State otherwise than in conformity with the State law, that is, through the dispensaries. While it did hold, construing the act of Congress of August, 1890, known as the Wilson act (act August 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1913, sec. 8738]), that liquors imported even for unlawful purposes could not be interfered with by State authority until after delivery thereof to the consignee, it as distinctly held that after such delivery they were subject to the State law, and could not be lawfully sold by the consignee, even in the original packages. Therefore, when the Webb-Kenyon law became effective, it was unlawful to sell intoxicating liquor in this State, except through the dispensaries; and the shipment or transportation of such liquor into the State for sale by private individuals was prohibited by that act, because such sale was in violation of existing valid laws of the State. So that, even if full force and effect be given to the language of this Court in the Atkinson case upon this point, it would not control the decision of this case, because the facts are different. In Atkinson's case the Court was considering the necessity of re-enacting a State

law that had been declared void as to interstate commerce, while in this case we are considering a State law that has been adjudged to be valid. So that our dictum that it was necessary to re-enact a State law that had been declared to be unconstitutional, after the constitutional objection was removed, was not only not necessary to the decision of Atkinson's case, but it is not applicable to the facts of this case.

But there is another answer to appellant's contention that is conclusive in any event. For, even if it should be conceded that subsequent State legislation was necessary to give effect to the Webb-Kenyon law, we have had such legislation. At the session of 1914 the legislature passed several acts which distinctly recognized and directed the enforcement of the liquor laws of the State existing when the Webb-Kenyon law became effective. By the act of February 14, 1914 (28 Stat. 754), it is made the duty of the rural policemen of Greenville county, in which the city of Greenville, the destination of the liquors herein sued for, is situated— "to patrol and police the county, and to prevent or detect offenses against the criminal law, and prosecute all persons for violation of the criminal law of every kind, making arrests upon their own initiation as well as upon complaint or information, *and to seize without warrant, and hold all alcoholic liquors in possession of any person for unlawful use,* and if no action to recover the same is begun within thirty days from such seizure, or if such action be begun and the judgment of the Court be adverse to the plaintiff, then such liquors shall be destroyed by the chief of rural police." (Italics added.)

The legislature evidently had in mind in the language above quoted all the criminal laws of the State, common and statutory, including the liquor laws, as set out in chapter 29 of the Criminal Code, in which special duties in respect to the enforcement thereof are imposed upon all constables and magistrates. The same observation is true of another act

passed at the same session (28 Stat. 546) amending the law relating to magistrates and their constables, which provides in the first section that the law as to magistrates and their constables, their powers, duties, etc., shall be as now provided by law. Numerous sections of the liquor law then on the books required magistrates and their constables to enforce it upon pain of summary suspension for neglect to do so. The defendant, Gosnell, was chief of the rural policemen for Greenville county. It was therefore made his duty by the express language of the statutes to seize the liquors in question.

It follows that by the terms of the Webb-Kenyon act the liquors here in question, being intended for use in violation of the State's laws, were divested of their interstate character, and their shipment and transportation into the State were prohibited. They became subject to the law of the State upon their arrival within its borders, and were therefore subject to seizure before delivery thereof to the consignees. Gosnell was not only authorized, but required, by the valid laws of the State to seize them, and therefore his act was justified by law. It follows that neither the plaintiff nor any of the defendants can recover the possession thereof from him. The judgment below is, therefore, right; in fact, Gosnell's motion for a directed verdict should have been granted. This conclusion makes it unnecessary to consider the assignments of error in the rulings and charge, except, perhaps, those which make the point that the rights of the carrier and consignors, who are alleged to have been innocent of any intended violation of the State laws, should be protected.

The language of the Webb-Kenyon act extends the prohibition thereof to the intention, with regard to such liquors, of any person interested therein. Therefore it is not necessary to make the prohibition effective that all persons interested therein shall have the unlawful intent; nor does it make any difference that there may be some person inter-

ested therein who has no such intent.    The consignor may
be innocent of it; but if the consignee has it, shipment and
transportation are prohibited.    Consignors and carriers of
such liquors may protect themselves from loss by requiring
payment of purchase price and freight charges before ship-
ment and transportation thereof.    Both are bound to know
that they are dealing in and with an article which may be
contraband, dependent upon the intention of the consignee,
or any other person interested therein.

For these reasons, I think the judgment below should be
affirmed.

MR. JUSTICE FRASER concurs in the opinion announced
by MR. JUSTICE HYDRICK.

MR. JUSTICE WATTS and CIRCUIT JUDGES PRINCE, SHIPP
and DEVORE dissent.