## SURVIVORS OF BENNETT G. CARIAGA, DECEASED, Respondents, Claimants-Appellants, *v.* DEL MONTE CORPORATION, Petitioner, Employer-Appellee, Self-Insured

NO. 7754

(CASE NO. AB79-59 (2-76-21225))

OCTOBER 29, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED TEMPORARILY

### OPINION OF THE COURT BY LUM, J.

We granted certiorari because of the importance of the question presented by this appeal.[1] The issue is whether the Labor and Industrial Relations Appeals Board (LIRAB), under HRS § 91-11 (1976), is first required to render a proposed decision before an adverse final order denying a claim for workers' compensation

---

[1] A consolidated amicus curiae brief was filed by the State of Hawaii and the four counties. Some seventy-five State agencies are involved.

benefits after two of its three board members heard the evidence. The Intermediate Court of Appeals ruled affirmatively on this issue; hence it did not find it necessary to address the remaining issue: whether the employer adduced substantial evidence to rebut the presumption of compensability under HRS § 386-85.[2]

We reverse the ruling of the lower court. We hold that the LIRAB did not violate HRS § 91-11, and we further hold that the LIRAB's decision in denying the claim, based on the whole record, was not clearly erroneous. HRS § 91-14(g)(5).[3]

I.

The claimants-appellants sought compensation under HRS § 386-3[4] as survivors of decedent Bennett G. Cariaga, who committed

---

[2] HRS § 386-85 (1976) *Presumptions.* In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury;

(2) That sufficient notice of such injury has been given;

(3) That the injury was not caused by the intoxication of the injured employee; and

(4) That the injury was not caused by the wilful intention of the injured employee to injure himself or another.

[3] HRS § 91-14 (1976) *Judicial review of contested cases.*

. . . .

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

. . . .

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; . . . .

[4] HRS § 386-3 (1976) *Injuries covered.* If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, his employer or the special compensation fund shall pay compensation to the employee or his dependents as hereinafter provided.

Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of his employment.

No compensation shall be allowed for an injury incurred by an employee by his wilful intention to injure himself or another or by his intoxication.

suicide. Decedent had been an employee of Del Monte Corporation, employer-appellee. The claimants alleged that the decedent's death arose out of his employment due to depression caused by his suspension from his job by his employer for no apparent reason "which led to his suicide by hanging."

The claim was denied by the director of the Department of Labor. A de novo appeal was taken to LIRAB, where only two of the three-member board participated in hearing the appeal. The LIRAB did not issue a proposed decision. Instead, it upheld the director and issued a final Decision and Order which was signed by the two members who attended the hearing. The third member abstained from signing the final order.

## II.

### A.

HRS § 91-11 (1976) provides:

> *Examination of evidence by agency.* Whenever in a contested case *the officials of the agency who are to render the final decision* have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties. (Emphasis added.)

In scrutinizing HRS § 91-11 to determine its application in this case, we begin by adopting part of the discussion of the appellate court.

The appellate court correctly explained that § 91-11 was patterned after the Model State Administrative Procedure Act, House Stand. Comm. Rep. No. 83, 1st Haw. Leg., 1st Spec. Sess., *reprinted in* House Journal 224-25 (1959), and that the legislature in its final adoption of § 91-11 deleted the phrase appearing in its first draft, "a majority of the officials of the agency," and opted in place thereof the phrase "the officials of the agency," which was then consonant

with the Model Act.

The legislature explains that the reason for the deletion of the phrase "majority of " was to insure that each member of an agency rendering a decision will be personally informed as to the evidence in the case, including the testimony of witnesses and examination of all of the evidence in the case. House Stand. Comm. Rep. No. 83, *supra* at 231.

The Model Act further explains the deletion:

> It is believed that the suggested language will make sure that each member participating in a decision is personally informed as to the facts of the case; and that it facilitates the delegation of the decision-making powers to a panel, in cases where it is not practicable for each member of the agency to participate actively in each case.

Model State Administrative Procedure Act § 11, Comment (Tent. Draft No. 1, 1959).

House Stand. Comm. Rep. No. 8, 1st Haw. Leg., 1st Sess., *reprinted in* House Journal 653, 659 (1961) also explains:

> The words "or read" has [*sic*] been changed to "and examined" as to officials who are to render the decision. The reason for the change is to insure that each member of an agency rendering a decision will be personally informed as to the evidence in the case including the hearing of witnesses and examination of all of the evidence in the case; otherwise there should be a proposed decision given to the parties . . . .

These explanations make it clear that a member who fails to hear the evidence must participate in a proposed decision before he is allowed to render a final decision. The requirement of a proposed decision thus allows an adverse claimant to file exceptions and to argue in order to assure that the non-participating member will become familiar with the evidence before casting his final vote. This required procedure is totally in keeping with fairness in view of the fact that most administrative agencies are composed of unpaid volunteers, are loosely attended and are authorized to delegate their hearing responsibility to a hearing officer under § 92-16(a)(3) (1976).

On two occasions, we reiterated the legislative dictate that a proposed decision must be issued to an adverse party before a

member who did not hear the evidence is allowed to render or participate in a final decision. In the case of *In re Oahu Terminal Services, Inc.,* 52 Haw. 221, 473 P.2d 573 (1970), since only two of a five-member commission heard the evidence and all five signed the final order, we held that a proposed decision was required. And in the case of *In re Terminal Transportation, Inc.,* 54 Haw. 134, 504 P.2d 1214 (1972), three members of the five-man commission heard the evidence; all signed the final order, but because they were joined by another who did not hear the evidence, we held that a proposed decision was required.[5] In both cases, we voided the final decisions because they were signed by members who obviously were not cognitive of the evidence.

In *White v. Board of Education,* 54 Haw. 10, 501 P.2d 358 (1972), we held that a hearing officer's report could serve as the agency's proposed decision under HRS § 91-11.

### B.

However, none of the foregoing decisions answers the precise question presented in this appeal — whether the final order of the board is legally valid where it is only signed by a majority of its members who in fact heard the evidence; the remaining member, who did not hear the evidence, abstained from participating in the final order.

It has been argued that unless the board's final decision is held to be valid, public agencies with vacancies or without the services of absent or disabled members will be unable to function. An appeal of this nature is highly emotional but hardly persuasive. We have confidence that the legislative process will be responsive.

### III.

As the appeals court pointed out, HRS § 91-11 is ambiguous to the extent that is it not clear whether the clause "the officers of the agency who are to render the final decision" refers to all members of

---

[5] In view of our ruling today, we question, but not necessarily overrule, whether this decision was a correct one.

the agency or only to members of the agency who actually render the final decision. To resolve this problem, we rely on a favorite rule of construction, which is that ambiguity must be construed with reference to the whole system of law of which it is a part, *State v. Russell,* 62 Haw. 474, 617 P.2d 84 (1980), and in pari materia or with reference to laws upon the same subject matter. *Coray v. Ariyoshi,* 54 Haw. 254, 506 P.2d 13 (1973). Furthermore, in doing so, we must look to the object to be accomplished, the purpose to be subserved, and place a reasonable or liberal construction which will best affect its purpose, so that ambiguity or uncertainty of the legislative intent receives the interpretation that best accords with the public benefit. *Rowley v. Public Service Commission,* 112 Utah 116, 185 P.2d 514 (1947); *Charleston & W. C. Ry. Co. v. Gosnell,* 106 S.C. 84, 90 S.E. 264 (1916).

## IV.

The administrative tribunal or agency has been created in order to handle controversies arising under particular statutes. It is characteristic of these tribunals that simple and non-technical hearings take the place of court trials and informal proceedings supersede rigid and formal pleadings and processes. 1 Davis, Administrative Law Treatise 39-40, § 1.05 (1958).

We note that HRS § 92-15 provides:

(1976) *Boards and commissions; quorum; number of votes necessary to validate acts.* Whenever the number of members necessary to constitute a quorum to do business, or the number of members necessary to validate any act, of any board or commission of the State or of any political subdivision thereof, is not specified in the law or ordinance creating the same or in any other law or ordinance, a majority of all the members to which the board or commission is entitled shall constitute a quorum to do business, *and the concurrence of a majority of all the members to which the board or commission is entitled shall be necessary to make any action of the board or commission valid;* provided that due notice shall have been given to all members of the board or commission or a bona fide attempt shall have been made to give the notice to all members to whom it was reasonably practicable to give the notice. This section shall not invalidate any act of any board or commission performed prior to April 20, 1937, which, under the

general law then in effect, would otherwise be valid. (Emphasis added.)

This provision of law holds that a majority vote is required to make a board action legally valid. There is nothing unusual with this requirement for it expresses the common notion that in a democracy it is customary for a majority vote to carry a group action.

Furthermore, HRS § 371-4(c) (1976) states:

*Labor and industrial relations appeals board.*

. . . .

(c) A decision concurred in by any two members shall constitute a decision of the board.

and, HRS § 371-4(d) (1976) states:

(d) A vacancy in the board, if there remain two members of it, shall not impair the authority of two members to act.

Thus, §§ 371-4(c) and 371-4(d) are consistent with § 92-15 and allow the LIRAB to make valid decisions with any two members concurring.

We see no reason, in the absence of clear legislative intent, to nullify the explicit language of these statutes. Furthermore, a concurrence of the majority would only make the proposed decision superfluous. *Compare, White v. Board of Education, supra.* We will not presume that the legislature intended a superfluous act.

Accordingly, we hold that the LIRAB was not required to issue a proposed decision under the circumstances of this case.

Turning to the remaining issue, upon review of the whole record, we find that the LIRAB's decision in concluding that Cariaga's depression and resulting death stemmed from the absence of his girl friend rather than his employment was not clearly erroneous. HRS § 91-14(g)(5).

Reversed.

*Bert S. Sakuda* and *L. Richard Fried, Jr. (Cronin, Fried, Sekiya, Haley & Kekina* of counsel) for petitioner, employer-appellee, self-insured.

*Bruce B. Kim (Kim & Kim* of counsel) for respondents, claimants-appellees.

On the Amicus Curiae brief:

*Randall Y. Iwase,* Deputy Attorney General, State of Hawaii.

*Steven S. C. Lim,* Deputy Corporation Counsel, City and County of Honolulu.

*Patricia K. O'Toole,* Assistant Corporation Counsel, County of Hawaii.

*Michael K. Abe,* Second Deputy County Attorney, County of Kauai.

*Robert M. Rothwell,* Deputy Corporation Counsel, County of Maui.