OUTDOOR CIRCLE; CONGRESS OF HAWAIIAN PEOPLE; KAILUA NEIGHBORHOOD BOARD; KAILUA COMMUNITY COUNCIL; THE AMERICAN ASSOCIATION OF UNIVERSITY WOMEN, WINDWARD BRANCH; SOCIAL CONCERNS COMMITTEE OF THE WINDWARD COALITION OF CHURCHES; THE LANIKAI ASSOCIATION; THE HAWAII FEDERATION OF GARDEN CLUBS, INC.; COUNCIL OF PRESIDENTS; REPRESENTATIVE FAITH EVANS; ARTHUR R. BEAUMONT; HOPE GRAY MILLER; and DEPARTMENT OF GENERAL PLANNING, CITY AND COUNTY OF HONOLULU, Appellants, *v.* HAROLD K.L. CASTLE TRUST ESTATE; HAROLD K.L. CASTLE; HENRY H. WONG; MICHAEL C. BALDWIN TRUST, ET AL.; STATE OF HAWAII, LAND USE COMMISSION; and STATE OF HAWAII, DEPARTMENT OF PLANNING AND ECONOMIC DEVELOPMENT, Appellees

(CIVIL NO. 59608)

NO. 8554

DEPARTMENT OF PLANNING AND ECONOMIC DEVELOPMENT, STATE OF HAWAII, Appellant, *v.* LAND USE COMMISSION, STATE OF HAWAII; HAROLD K.L. CASTLE, ET AL.; DEPARTMENT OF GENERAL PLANNING, CITY AND COUNTY OF HONOLULU; and THE AD HOC COMMITTEE FOR KAWAINUI, Appellees

(CIVIL NO. 54296)

AND

SHORELINE PROTECTION ALLIANCE; OUTDOOR CIRCLE; CONGRESS OF HAWAIIAN PEOPLE; ENVIRONMENTAL EDUCATION ASSOCIATION OF HAWAII; HAWAIIAN TRAIL & MOUNTAIN CLUB; KAILUA NEIGHBORHOOD BOARD; KAI-

LUA COMMUNITY COUNCIL; KANEOHE COM-
MUNITY COUNCIL; THE KAILUA, HAWAII
BRANCH OF THE AMERICAN ASSOCIATION OF
UNIVERSITY WOMEN; SOCIAL CONCERNS COM-
MITTEE OF THE WINDWARD COALITION OF
CHURCHES; THE LANIKAI ASSOCIATION; THE
HAWAII FEDERATION OF GARDEN CLUBS, INC.;
THE MAUNAWILI COMMUNITY ASSOCIATION;
COUNCIL OF PRESIDENTS POLICY COMMITTEE;
REPRESENTATIVE FAITH P. EVANS; REPRESEN-
TATIVE ANDREW K. POEPOE; DOROTHY BABI-
NEAU; ARTHUR R. BEAUMONT; HOPE M. GRAY
MILLER; and MANUEL N. SPROAT, Appellants, *v.*
HAROLD K.L. CASTLE TRUST ESTATE; HAROLD
K.L. CASTLE; HENRY H. WONG; MICHAEL C.
BALDWIN TRUST, ET AL.; STATE OF HAWAII,
DEPARTMENT OF PLANNING & ECONOMIC
DEVELOPMENT; STATE OF HAWAII, LAND USE
COMMISSION; and DEPARTMENT OF GENERAL
PLANNING, CITY AND COUNTY OF HONOLULU,
Appellees

(CIVIL NO. 54303)

NO. 9025

DECEMBER 9, 1983

BURNS, C.J., TANAKA, J., AND CIRCUIT JUDGE RONALD B.
GREIG IN PLACE OF ASSOCIATE JUDGE HEEN, RECUSED

OPINION OF THE COURT BY TANAKA, J.

These appeals are from the April 17, 1979 order entered in the consolidated case of First Circuit Court Civil Nos. 54296 and 54303, which constitute our No. 9025, and from the November 4, 1981 decision filed in First Circuit Court Civil No. 59608, which is our No. 8554. The order and decision, in essence, affirmed the decisions and orders of the Land Use Commission (LUC) denying the reclassification of 244.15 acres of land located at Kailua, Oahu, near the Kawainui Marsh (subject property), from urban to conservation, except as to 70.78 acres of marsh lands.

Although many parties, including the State Department of Planning and Economic Development (DPED) and Department of General Planning of the City and County of Honolulu

(DGP), appealed LUC's decisions and orders to the circuit court, only twelve appellants are before us in these appeals. They are the Outdoor Circle; Congress of Hawaiian People; Kailua Neighborhood Board; Kailua, Community Council; The American Association of University Women, Windward Branch; Social Concerns Committee of the Windward Coalition of Churches; The Lanikai Association; The Hawaii Federation of Garden Clubs, Inc.; Council of ` Presidents; Representative Faith Evans; Arthur R. Beaumont; and Hope Gray Miller (collectively the appellants).

The questions raised on appeal are (1) whether the circuit court erred in holding that LUC committed no reversible procedural errors, and (2) whether the circuit court erred in concluding that LUC made no reversible substantive errors in its decisions and orders. We answer no to both questions and affirm.

On October 12, 1976, DPED filed with LUC its petition requesting reclassification of the subject property[1] from urban to conservation.[2] Pursuant to Hawaii Revised Statutes (HRS) § 205-4(e)(1)(1976), DPED and DGP were mandatory parties in the proceeding. As owners of portions of the subject property, Harold K.L. Castle Trust Estate, Harold K.L. Castle, Henry H. Wong, and Michael C. Baldwin Trust (collectively

---

[1] The subject property was classified urban in 1964. On September 13, 1974, the City and County of Honolulu (City) requested that the subject property be reclassified to conservation so that City could proceed with its planned development of a regional park. City already owned the approximately 750 acres of conservation land constituting the Kawainui Marsh. On October 29, 1974, the Land Use Commission (LUC) filed a petition to change the land use of the subject property under its five-year boundary review procedure. The following year, the petition was refiled under the newly adopted quasi-judicial contested cases provision of Hawaii Revised Statutes (HRS) chapter 91. LUC's petition was withdrawn, however, when the State Department of Planning and Economic Development (DPED) suggested that DPED would be the more appropriate party to initiate the action.

[2] LUC is empowered to group contiguous land areas into one of the four major land use districts: urban, rural, agricultural, and conservation. HRS § 205-2 (1976 & Supp. 1982). LUC also has authority to reclassify the land use by changing district boundaries in accordance with statutory procedural and substantive requirements. HRS § 205-4 (1976). *See Neighborhood Board v. State Land Use Commission,* 64 Haw. 265, 639 P.2d 1097 (1982).

Castle) were admitted as parties in the proceeding upon their intervention as permitted by HRS § 205-4(e)(3). Under the provisions of HRS § 205-4(e)(4), appellants and other parties were permitted to intervene.

Between March and September 1977, LUC held a pre-hearing conference and five full-day hearings and all mandatory and intervening parties presented evidence. In January 1978, LUC held three public action meetings and adopted specific findings of fact. At the last public action meeting, LUC voted 5 to 2 to deny the petition. Subsequently, conclusions of law were adopted, and on March 7, 1978, a decision and order was filed.

On April 5, 1978, DPED appealed LUC's decision and order to the circuit court in Civil No. 54296. On April 6, 1978, appellants and other intervening parties likewise appealed to the circuit court in Civil No. 54303, in which DGP joined. On April 17, 1979, in the consolidated case of Civil Nos. 54296 and 54303, the circuit court entered its order affirming LUC's decision and order in all particulars, except as to the marsh portions of the subject property which should have been reclassified as conservation. The circuit court remanded the matter to LUC for the limited purpose of determining the boundary of the marsh acreage of the subject property.

On May 16, 1979, appellants and certain other intervening parties filed their notice of appeal from the circuit court's April 17, 1979 order. On February 19, 1981, this court dismissed the appeal for lack of appellate jurisdiction.

In the interim, on May 30 and June 26, 1979, LUC held additional hearings on the remanded matter. On October 3, 1979, LUC filed its decision and order determining that 70.78 acres or 28.99 percent of the subject property constituted marsh lands and appended to its order a map delineating the newly designated conservation lands.

On November 5, 1979, appellants and other intervening parties appealed LUC's October 3, 1979 decision and order to the circuit court in Civil No. 59608.[3] On November 4, 1981, the

---

[3] In Civil No. 59608, the City Department of General Planning realigned itself as a party appellant. However, DPED did not participate in the case.

circuit court affirmed LUC's October 3, 1979 decision and order. Appellants' timely appeals from the circuit court's November 4, 1981 decision in Civil No. 59608 and April 17, 1979 order in the consolidated case of Civil Nos. 54296 and 54303 followed.

I.

Since the parties disagree concerning the standard of review applicable to these appeals, we will discuss this matter at the outset.

The applicable standards of review of an agency's decision by the circuit court are set forth in Hawaii Revised Statutes (HRS) § 91-14(g) (1976). *Aio v. Hamada,* 66 Haw. 401, 664 P.2d 727 (1983); *McGlone v. Inaba,* 64 Haw. 27, 636 P.2d 158 (1981); *Foster Village Community Ass'n v. Hess,* 4 Haw. App. 463, 667 P.2d 850 (1983). HRS § 91-14(g) consists of six separate subsections[4] to be applied to the "findings, conclusions, decisions, or orders" of an administrative agency. To reverse or modify an agency's decision and order, HRS § 91-14(g) requires a finding that an appellant's "substantial rights . . . may have been prejudiced" under one of the six subsections. Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under sub-

---

[4] HRS § 91-14(g) reads:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

section (5); and an agency's exercise of discretion under subsection (6).

Furthermore, a review of an agency's decision is always tempered by the precept that:

> In order to preserve the function of administrative agencies in discharging their delegated duties and the function of this court in reviewing agency determinations, a presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise and one seeking to upset the order bears "the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences."

*In re Hawaii Electric Light Co., Inc.,* 60 Haw. 625, 630, 594 P.2d 612, 617 (1979) (quoting *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 602, 64 S. Ct. 281, 288, 88 L.Ed.2d 333, 345 (1944), quoted in *In re Kauai Electric Division of Citizens Utilities Co.,* 60 Haw. 166, 187, 590 P.2d 524, 583 (1978)). *See also Hawaii Public Employment Relations Board v. United Public Workers,* 66 Haw. 461, 667 P.2d 783 (1983); *Waikiki Resort Hotel, Inc. v. City & County,* 63 Haw. 222, 624 P.2d 1353 (1981).

In this case, the question is what standard applies to an appellate court's review of the circuit court's review of the agency's decision. This "secondary" appeal is governed by HRS § 91-15 (Supp. 1982) which steers the appeal through HRS chapter 602. In turn, HRS § 602-5(1) (Supp. 1982) gives the appellate court jurisdiction and power[5] to "hear and determine all questions of law, or of mixed law and fact, which are properly brought before it on any appeal allowed by law from any court or agency."

Neither our statutes nor reported cases clearly define the standard of review on the secondary appeal. However, since the circuit court did not hear new evidence in the proceedings,

---

[5] HRS § 602-57 (Supp. 1982) provides that this court "shall have concurrent jurisdiction with the supreme court on all matters set out in section 602-5(1) through (7), subject to assignment of cases set out in section 602-5(8)."

it is "in no better position to review agency action than this court." *Committee for an Independent P-I v. Hearst Corp.,* 704 F.2d 467, 472 (9th Cir. 1983). *See also Deuter v. South Dakota Highway Patrol,* 330 N.W.2d 533 (S. D. 1983). Thus, we must look at the record "compiled before the administrative agency itself." *Application of Nebraska Public Power Dist., 330 N.W.2d 143, 147 (N. D. 1983). See also Unified School Dist. No. 461 v. Dice,* 228 Kan. 40, 612 P.2d 1203 (1980).

In *Homes Consultant Co., Inc. v. Agsalud,* 2 Haw. App. 421, 633 P.2d 564 (1981), and *Foodland Super Market, Ltd. v. Agsalud,* 3 Haw. App. 573, 656 P.2d 100 (1982), we stated that our secondary review of the circuit court's initial review is governed by the clearly erroneous standard of Rule 52(a), Hawaii Rules of Civil Procedure (1981). In light of our holding below, we believe we erred.

We hold that our review of the circuit court's review of the agency's decision is based on the "right/wrong standard" defined in *State v. Miller,* 4 Haw. App. 603, 671 P.2d 1037 (1983), and *Davis v. Davis,* 3 Haw. App. 501, 653 P.2d 1167 (1980). In order to determine whether the circuit court's decision was right or wrong, we must also apply HRS § 91-14(g) to the agency's decision. *Aio v. Hamada, supra. Cf. Survivors of Bennett G. Cariaga v. Del Monte Corp.,* 65 Haw. 404, 652 P.2d 1143 (1982) (although the case dealt principally with statutory construction on certiorari to this court, our supreme court applied HRS § 91-14(g) in its secondary review of our initial review of the agency's decision).

II.

Appellants argue that LUC committed the following reversible procedural errors: (1) it adopted conclusions of law without either a public meeting or any of the parties being present in violation of HRS §§ 92-3 and -6(b) (1976); (2) it precluded appellants from presenting arguments on all issues in violation of HRS § 91-9(a) and (c) (1976) and HRS § 91-10(3) (1976); (3) it rejected certain of appellants' proposed findings without a quorum of the commissioners being present in violation of HRS § 92-15 (1976); and (4) it failed to incorpo-

rate in its decision a ruling on each of appellants' proposed findings in violation of HRS § 91-12 (Supp. 1982). Therefore, appellants claim that the circuit court erred in upholding LUC's decisions and orders on procedural grounds. We disagree.

### A.

Chapter 92, HRS, is popularly known as the Sunshine Law. HRS § 92-3 mandates that "[e]very meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92-4 and 92-5."

The record reveals that on January 19, 1978 when the third and last action meeting was held, LUC voted to deny DPED's petition. Commissioner Duke then indicated that the conclusions of law "will be worked on" by LUC and its counsel. Transcript of January 19, 1978 Proceeding at 453. The record is silent as to what occurred thereafter until LUC's decision and order signed by five commissioners was filed on March 7, 1978. We assume that LUC's counsel drafted and incorporated the conclusions of law in the March 7, 1978 order and decision. We also assume that LUC did not convene any meeting to deliberate on and adopt those conclusions.

Although HRS § 92-6(a)(2) provides that the Sunshine Law shall not apply to adjudicatory functions exercised by administrative agencies, *Chang v. Planning Commission,* 64 Haw. 431, 643 P.2d 55 (1982), HRS § 92-6(b) states that the Sunshine Law "shall apply *to require open deliberation of the adjudicatory functions* of the Land Use Commission." (Emphasis added.) Thus, the crucial question is whether the adoption of the conclusions of law was an adjudicatory function which necessitated a LUC open meeting.

LUC argues that after it had accepted the final version of the findings of fact and voted to deny DPED's petition at open meetings, its adjudicatory functions were concluded. Thereafter, all that remained to be done by LUC's counsel were "legal 'housekeeping' chores" of drafting the conclusions of law "as inferred from the adopted findings of fact," preparing the

decision and order, and obtaining the requisite signatures. LUC's Answering Brief at 14-15. Such "housekeeping chores" were not adjudicatory functions requiring a LUC meeting. We do not agree.

Administrative adjudication has been defined as "any final decision, determination or ruling by an agency affecting personal or property rights." *Ambron v. Philadelphia Civil Service Commission.* 54 Pa. Commw. 488, 493, 422 A.2d 225, 227 (1980). Although this definition does not clarify which functions are included, our statute mandates that the "provisions requiring open meetings shall be liberally construed." HRS § 92-1(2). Construing HRS § 92-6(b) liberally, we hold that the adjudicatory functions include the adoption of conclusions of law, especially in the light of HRS § 91-12 which requires an agency's decision and order to be "accompanied by separate findings of fact and conclusions of law." At the least, LUC should have disseminated the drafted conclusions of law and adopted them at an open meeting.

However, HRS § 92-11 (1976) provides that an agency decision made in violation of the Sunshine Law is voidable only "upon proof of *wilful* violation." (Emphasis added.) It is clear from the record that LUC carried out the mandates of the Sunshine Law throughout its proceedings, giving the required notices and holding five public hearings and three public action meetings. It did not hold a meeting to adopt the conclusions of law because it viewed this as a "housekeeping" function and assumed that the Sunshine Law did not apply. Under such circumstances, we hold that there was no wilful violation of the Sunshine Law and the conclusions of law are not voidable.

### B.

In contested cases, HRS § 91-9(a) provides that "all parties shall be afforded an opportunity for hearing after reasonable notice," and HRS § 91-9(c) states that "[o]pportunities shall be afforded all parties to present evidence and argument on all issues involved." HRS § 91-10(3) accords each party "the right to conduct such cross-examination as may be required for a full and true disclosure of the facts."

First, appellants contend that because LUC did not adopt

the conclusions of law at an open meeting, they were deprived of their right to present argument concerning the conclusions resulting in a violation of HRS § 91-9(a) and (c). Our holding on the Sunshine Law issue above is dispositive of this question.

Second, appellants allege that during the January 19, 1978 action meeting, LUC ordered the parties not to make any further comments unless specifically requested to do so by LUC. They claim that this violated HRS § 91-9(a) and (c). An examination of the record reveals that neither provision was violated. The parties presented evidence at five full days of public hearing and made their respective closing statements. In addition, they were permitted to comment on LUC's deliberations on the proposed findings and responses thereto at the first two action meetings. When it became clear that the parties were merely rearguing their respective positions, LUC ordered them to make no further comments. Such order under those circumstances did not constitute a violation of HRS § 91-9(a) and (c).

Third, appellants argue that LUC's failure to permit complete cross-examination of a certain witness was a violation of HRS § 91-10(3). However, the right claimed by appellants is limited by HRS § 91-10(1) which requires the agency "as a matter of policy [to] provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence." The transcript reveals several pages of cross-examination conducted by both DPED and appellants. Although HRS § 91-10(1) does not give an agency a license to disallow evidence, *Cazimero v. Kohala Sugar Co.*, 54 Haw. 479, 510 P.2d 89 (1973), LUC properly disallowed unduly repetitious testimony. *Waikiki Resort Hotel, Inc. v. City & County, supra.*

C.

Section 92-15, HRS, provides in relevant part:
> [A] majority of all the members to which the . . . commission is entitled shall constitute a quorum to do business, and the concurrence of a majority of all the members to which the . . . commission is entitled shall be necessary to make any action of the . . . commission

valid[.]

Appellants claim that there was no quorum present when LUC rejected appellants' proposed Findings of Fact Nos. 24 and 25; such action violated HRS § 92-15; and, therefore, its action was invalid.

There is nothing in the record to support appellants on this issue other than the affidavit of appellants' counsel which states that "Commissioner Yanai left the room during the debate which involved . . . action on proposed Findings of Facts[sic] Nos. 24 and 25." Civil No. 54303 Record at 383. The affidavit was attached to appellants' reply brief filed in Civil No. 54303 and properly was not considered by the circuit court, and we may not either. *See McGlone v. Inaba, supra.*

Even if the facts as stated in the affidavit may be considered, appellants' argument has no merit. Appellants admit that "the Findings of Fact are not contested." Opening Brief at 10. Consequently, there being no prejudice, there is no reversible error.

### D.

An agency's decision and order in a contested case must be in writing and HRS § 91-12 provides that if any party has filed proposed findings of fact, "the agency shall incorporate in its decision a ruling upon each proposed finding so presented."[6] Appellants contend that LUC violated HRS § 91-12 by failing to specify in its decision the disposition of each of appellants' proposed findings.

It is not indispensable that there be a separate ruling on each proposed finding of fact. *Mitchell v. BWK Joint Venture,* 57 Haw. 535, 560 P.2d 1292 (1977); *In re Terminal Transportation, Inc.,* 54 Haw. 134, 504 P.2d 1214 (1972); *Freitas v. Pacific Contractors Co.,* 1 Haw. App. 77, 613 P.2d 927 (1980). However, "the agency must make its findings reasonably clear." *In re Terminal Transportation, Inc.,* 54 Haw. at 139, 504 P.2d at

---

[6]The 1980 amendment to HRS § 91-12 did not affect the part quoted in this opinion.

1217. In its March 7, 1978 order and decision, LUC made and incorporated reasonably clear findings. By choosing those, it impliedly rejected all others. LUC did not err in doing so.

We find no reversible procedural errors made by LUC and hold that the circuit court was right in upholding LUC's decisions and orders on this ground.

### III.

Appellants contend that the findings of fact and the HRS § 205-2 land use district criteria required the reclassification of the subject property from urban to conservation use. Consequently, LUC's conclusion that the subject property did not conform to a satisfactory degree with the criteria for the conservation district, which resulted in the denial of DPED's petition, was substantive error. We do not agree.

We have carefully examined the complete record. Much evidence was presented, but most of it concerned the Kawainui Marsh and not the subject property. Consequently, many of the findings of fact were about the Kawainui Marsh and its ecological significance. Those findings, however, were superfluous to the conclusions of law and order dealing with the subject property, except to the extent that they related to that part reclassified on remand. Based on such analysis, we find no contradiction between the findings and conclusions and no substantive error.

We find that LUC's orders and decisions do not violate any statutory provisions and are not affected by any errors in law. Therefore, we hold that the circuit court was right in affirming LUC in its denial of DPED's petition, except as to 70.78 acres of marsh lands.

### IV.

Finally, appellants contend that LUC's October 3, 1979 decision and order does not evidence the reclassification of the 70.78 acres to conservation use. We disagree.

The order and decision refers to an appended Exhibit "A," a map, on which LUC outlined the newly classified area and

designated it in the legend as "reclassified to conservation." Consequently, the order and decision sufficiently evidences the reclassification of the 70.78 acres.

Affirmed.

*Jack F. Schweigert* (*Earl Ignatius Gettelfinger* with him on the reply brief; *Schweigert & Associates,* of counsel) for appellants Outdoor Circle, et al.

*Benjamin M. Matsubara* (*Mervyn M. Kotake* with him on the brief; *Ukishima & Matsubara,* of counsel) for appellee Land Use Commission, State of Hawaii.

*Lloyd Y. Asato* (*Morio Omori* with him on the brief) for appellees Harold K.L. Castle Trust Estate, Harold K.L. Castle, Henry H. Wong, Michael C. Baldwin Trust, et al.