LAW LIBRARY

NO. 29410

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

Civil No. 07-1-0456
In the Matter of
UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Complainant/Appellant-Appellant,
v.
ROBERT WATADA, Chairperson, Wai'alae School Board, Wai'alae
Elementary School; STATE OF HAWAII; WAI'ALAE ELEMENTARY
SCHOOL, STATE OF HAWAII; and JONATHAN A. SWANSON, Deputy
Attorney General, State of Hawaii (2004-008),
Respondents/Appellees-Appellees,
and
HAWAII LABOR RELATIONS BOARD,
Agency/Appellee-Appellee

and

Civil No. 07-1-0457
In the Matter of
UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Complainant/Appellant-Appellant,
v.
ROBERT WATADA, Chairperson, Wai'alae School Board,
Wai'alae Elementary School; DEPARTMENT OF EDUCATION,
STATE OF HAWAII; PATRICIA HAMAMOTO, Superintendent,
Department of Education, State of Hawaii (2005-069),
Respondents/Appellees-Appellees,
and
HAWAII LABOR RELATIONS BOARD,
Agency/Appellee-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

This secondary appeal arises out of a dispute over the decision to privatize food services at Wai'alae Elementery School (the School), a public charter school. Complainant/Appellant-Appellant United Public Workers, AFSCME, Local 646, AFL-CIO (UPW) appeals from the First Amended Final Judgment filed in Civil Nos.

07-1-0456 and 07-1-0457[1] on October 6, 2008 in the Circuit Court of the First Circuit[2] (circuit court). Pursuant to the April 22, 2008 "Order Affirming Agency-Appellee Hawaii Labor Relations Board's Order Nos. 2424 and 2425 Dated February 8, 2007," the circuit court entered judgment in favor of Respondents/Appellees-Appellees Robert Watada (Watada), Chairperson, Wai'alae School Board, Wai'alae Elementary School; the State of Hawai'i (the State); the School; and Jonathan A. Swanson (Swanson), State of Hawai'i Deputy Attorney General; and Agency/Appellee-Appellee Hawaii Labor Relations Board (HLRB) and against UPW.

On appeal, UPW contends the circuit court erred

(1) "by its refusal to reverse [the HLRB] which violated its mandate under HRS § 89-14 [(1993)] to exercise 'exclusive original jurisdiction' over prohibited practices not decided by an arbitrator";

(2) "by affirming [HLRB] orders which are 'affected by error of law' because the arbitrator declined to consider and decide the statutory issues against either" the School or the State of Hawai'i Department of Education (DOE); and

(3) "when it declined to reverse the [HLRB] for its failure to follow established case precedent under [Spielberg Mfg. Co., 112 N.L.R.B. 1080 (1955),] and its deferral procedure."

## I. BACKGROUND

UPW is the exclusive bargaining representative of blue-collar, non-supervisory employees in bargaining Unit 1. UPW and the State of Hawai'i are parties to a collective bargaining Unit 1 Agreement (CBA), which sets forth a grievance procedure for addressing disputes that arise out of the CBA. The CBA was in effect from July 1, 1999 to June 30, 2003 and was extended to June 30, 2005.

---

[1] Civil Nos. 07-1-0456 and 07-1-0457 were consolidated by the circuit court on July 16, 2007.

[2] The Honorable Sabrina S. McKenna presided.

On December 15, 2003, the DOE notified UPW and cafeteria employees in Unit 1 assigned to the School that the cafeteria at the School would close in four days.  On December 23, 2004, UPW filed a prohibited practice complaint before the HLRB over the closure of the cafeteria and the displacement of Unit 1 employees.  The parties negotiated a settlement culminating in the March 3, 2004 "Memorandum of Agreement Between State of Hawaii Department of Education, the Wai'alae Elementary School, and the United Public Workers" (Settlement Agreement).  The Settlement Agreement obligated the School to purchase school meals from the DOE through Anuenue Elementary School.

Because Watada refused to sign off on the Settlement Agreement, on March 24, 2004, UPW filed a Prohibited Practice Complaint against Watada, the School, and Swanson (collectively, 558 Respondents) before the HLRB in Case No. CE-01-558.  UPW alleged that the refusal of the 558 Respondents to sign the Settlement Agreement amounted to a refusal to bargain in good faith in violation of HRS § 89-13(a) (Supp. 2009).  On June 30, 2004, the HLRB granted UPW's motion for summary judgment and ordered that Watada and the School shall cease and desist from repudiating the Settlement Agreement and shall execute and implement the Settlement Agreement (HLRB Order No. 2264 in Case No. CE-01-558).  On April 28, 2005, UPW filed a motion to enforce HLRB Order No. 2264 in Case No. CE-01-558.  On May 17, 2005, the HLRB joined the DOE as a party to the proceeding.

In the meantime, on March 28, 2005, UPW filed another Prohibited Practice Complaint before the HLRB against Watada and Patricia Hamamoto (Hamamoto), the DOE Superintendent, (collectively, 594 Respondents) in Case No. CE-01-594 for Respondents' alleged failure to provide complete information in response to UPW's requests.  UPW alleged that this failure amounted to violations of HRS § 89-13(a).  UPW thereafter amended its complaint in CE-01-594 to reflect that "information provided

3

to UPW to date by [594 Respondents] indicate[s] that respondents have wilfully failed to comply with the terms and provisions of the March 3, 2004 [Settlement Agreement]."

UPW moved to defer the prohibited practices alleged in both Case No. CE-01-558 and Case No. CE-01-594 to arbitration. The HLRB granted the motions.

Finding no agreement to arbitrate grievances between the School and UPW, Arbitrator Uesato (Uesato) dismissed the School from the arbitration. UPW subsequently, on March 8, 2006, filed a motion in each case to reopen proceedings between UPW and Watada/the School. On February 8, 2007, HLRB denied each motion in HLRB Order Nos. 2424 (CE-01-558) and 2425 (CE-01-594).

UPW timely filed a notice of appeal to the circuit court in each case, challenging HLRB Order Nos. 2424 (Civ. No. 07-1-0456) and 2425 (Civ. No. 07-1-0457). The circuit court consolidated the cases.

On December 18, 2007, Uesato issued his final award as to the remaining parties (not including Watada and the School) in the arbitration proceedings. The DOE filed a special proceeding to confirm Uesato's award and UPW, in the same proceeding, filed a motion to confirm in part, vacate in part, and modify or correct in part the award. By orders dated March 10 and March 18, 2008, in the special proceeding, the circuit court vacated Uesato's dismissal of the School and remanded the case to Uesato for further arbitration proceedings as to the School. The circuit court also affirmed the arbitration award as to the DOE, but authorized Uesato to modify the remedy as to the DOE if Uesato determined that such modification was appropriate following the arbitration with the School.

The circuit court held a hearing on March 17, 2008 regarding the two consolidated civil cases and on April 22, 2008, filed its Order Affirming Agency-Appellee [HLRB's] Order Nos. 2424 and 2425 Dated February 8, 2007. On September 16, 2008, the

circuit court denied UPW's motion for reconsideration of the order affirming the HLRB orders. This timely appeal followed.

## II. STANDARDS OF REVIEW

### A. Administrative Agency Decisions-Secondary Appeals

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [(1993)] to the agency's decision.

*Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan*, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Bragg v. State Farm Mutual Auto. Ins.*, 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996)) (alteration in original). HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw. App. 633, 638-39, 675 P.2d 784, 789 (1983)).

Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City &
County of Honolulu, 114 Hawai'i 184, 193, 159 P.3d 143, 152
(2007) (some brackets in original and some added).

### B.    Statutory Interpretation

Questions of statutory interpretation are questions of
law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following
well established principles:

> our foremost obligation is to ascertain and give
> effect to the intention of the legislature, which is
> to be obtained primarily from the language contained
> in the statute itself.  And we must read statutory
> language in the context of the entire statute and
> construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or
> indistinctiveness or uncertainty of an expression used
> in a statute, an ambiguity exists.
>
> In construing an ambiguous statute, the meaning
> of the ambiguous words may be sought by examining the
> context, with which the ambiguous words, phrases, and
> sentences may be compared, in order to ascertain their
> true meaning.  Moreover, the courts may resort to
> extrinsic aids in determining legislative intent.  One
> avenue is the use of legislative history as an
> interpretive tool.

[The appellate] court may also consider the reason and
spirit of the law, and the cause which induced the
legislature to enact it to discover its true meaning.

Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, 107
Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation
marks, brackets and ellipses omitted) (quoting Guth v. Freeland,
96 Hawai'i 147, 149-50, 28 P.3d 982, 984-85 (2001)).

### III.  DISCUSSION

UPW contends the circuit court erred in affirming HLRB
Orders Nos. 2424 and 2425.  UPW argues that the HLRB's refusal to
reopen and determine the prohibited practice claims after Uesato
declined to determine them violates "the clear statutory mandate"
of HRS § 89-14.  HRS § 89-14 provides:

§89-14 **Prevention of prohibited practices.** Any controversy concerning prohibited practices[3] may be submitted to the [HLRB] in the same manner and with the same effect as provided in section 377-9[4]; provided that the [HLRB] shall have <u>exclusive original jurisdiction</u> over such a controversy except that nothing herein shall preclude (1) the institution of appropriate proceedings in circuit court pursuant to section 89-12(e) or (2) the judicial review of decisions or orders of the [HLRB] in prohibited practice controversies in accordance with section 377-9 and chapter 91. All references in section 377-9 to "labor organization" shall include employee organization.

(Emphasis and footnotes added.)

Watada, the School, and the HLRB argue that the HLRB did exercise exclusive original jurisdiction over the dispute, but, at UPW's request, deferred such jurisdiction to Uesato and

---

[3] HRS § 89-13 (Supp. 2009) defines prohibited practices. It provides in relevant part:

§89-13 **Prohibited practices; evidence of bad faith.** (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:

(1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

. . . .

(3) Discriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization;

. . . .

(5) Refuse to bargain collectively in good faith with the exclusive representative as required in section 89-9;

(6) Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;

(7) Refuse or fail to comply with any provision of this chapter;

(8) Violate the terms of a collective bargaining agreement[.]

[4] HRS § 377-9 (1993) provides in relevant part:

§377-9 **Prevention of unfair labor practices.** (a) Any controversy concerning unfair labor practices may be submitted to the [HLRB] in the manner and with the effect provided in this chapter, but nothing herein shall prevent the pursuit of relief in courts of competent jurisdiction.

(b) Any party in interest may file with the [HLRB] a written complaint, on a form provided by the [HLRB], charging any person with having engaged in any specific unfair labor practice.

did not retain conditional jurisdiction over the prohibited practice claims against the School. Watada and the School further argue that by determining that the CBA did not apply to the School and thereby dismissing the School from arbitration, Uesato effectively addressed the prohibited practice claims against the School because "the prohibited practice claims against the School are completely reliant upon the existence of underlying contract violations." Watada and the School accordingly explain that "absent a determination that the [CBA] applied to the School at the time that the [Settlement Agreement] was executed and the grievance was filed, any ground for alleging that the School committed a prohibited practice of any kind . . . is baseless."

The narrow legal issue presented by this appeal is whether the HLRB's denial of UPW's motions to reopen proceedings as to the School violated HRS § 89-14.

HRS Chapter 89 is titled "Collective Bargaining in Public Employment." The chapter is intended to establish "guidelines for public employment relations . . .; to provide a rational method for dealing with disputes and work stoppages; and to maintain a favorable political and social environment." HRS § 89-1(a) (Supp. 2009). To this end, Chapter 89, among others, "creat[es] a labor relations board to administer the provisions of chapters 89 and 377." HRS § 89-1(b)(3) (Supp. 2009).

The HLRB is empowered to resolve controversies arising under Chapter 89. HRS § 89-5(i)(3) (Supp. 2009); see Jordan v. Hawaii Gov't Employees' Ass'n, Local 152, AFSCME, AFL-CIO, 472 F. Supp. 1123, 1127 (D. Hawai'i 1979). HRS § 89-14 vests HLRB with "exclusive original jurisdiction" over controversies involving "prohibited practices."

Chapter 89 also expressly authorizes parties to a collective bargaining agreement to establish means of addressing contractual disputes:

8

§89-10.8 **Resolution of disputes; grievances.** (a) A public employer shall enter into written agreement with the exclusive representative setting forth a grievance procedure culminating in a final and binding decision, to be invoked in the event of any dispute concerning the interpretation or application of a written agreement. The grievance procedure shall be valid and enforceable[.]

HRS § 89-10.8(a) (Supp. 2009). We note that these grievance procedures address disputes "concerning the interpretation or application of a written agreement." Id.

Uesato's decision to dismiss the School from arbitration arose from such a dispute. The School questioned whether there was any basis that compelled arbitration between UPW and the School. In dismissing the School as a party to the arbitration, Uesato addressed that preliminary issue, concluding that there was "no basis for the Arbitrator to exercise jurisdiction over [the School]" and noting that "[t]he ground for [the School's] dismissal was the absence of an arbitration agreement between [the School] and the UPW."

Consequently, when UPW moved to reopen the HLRB proceedings on March 8, 2006, it was clear from Uesato's decision to dismiss the School from the arbitration that Uesato would not reach the statutory issues, i.e., the School's alleged violations of HRS § 89-13. In light of Uesato's decision to dismiss the School, those issues should have been resolved by the HLRB, which has exclusive original jurisdiction over prohibited practice claims under HRS § 89-14.

We accordingly hold that the circuit court erred in affirming the HLRB's orders denying UPW's motions to reopen proceedings as to the School. HLRB Order No. 2424 in Case No. CE-01-558 and Order No. 2425 in Case No. CE-01-594 prejudiced UPW's substantial rights and violated HRS § 89-14. Citizens Against Reckless Dev., 114 Hawaiʻi at 193, 159 P.3d at 152.

Our decision that the circuit court erred in affirming HLRB Orders Nos. 2424 and 2425 is based on the circumstances presented to the HLRB at the time the HLRB entered these orders.

We note that since that time, the circuit court vacated Uesato's dismissal of the School from the arbitration proceedings and remanded the case to Uesato for further arbitration proceedings with respect to the School. We are not apprised of the present state of the remanded arbitration proceedings regarding the School, and we do not address whether the HLRB should reopen the proceedings under the current circumstances. We merely address the narrow legal issue of whether the circuit court erred in affirming HLRB Orders Nos. 2424 and 2425.

## IV. CONCLUSION

We vacate the First Amended Final Judgment filed in Civil Nos. 07-1-0456 and 07-1-0457 on October 6, 2008 in the Circuit Court of the First Circuit and remand for proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, June 24, 2010.

On the briefs:

Herbert R. Takahashi
Rebecca L. Covert
(Takahashi Vasconcellos &
   Covert)
for Complainant/Appellant-
Appellant.

Richard H. Thomason,
Deputy Attorney General,
for Respondents/Appellees-
Appellees Robert Watada and
Wai'alae School.

Valri Lei Kunimoto
for Agency/Appellee-
Appellee Hawaii Labor
Relations Board.

_Craig H. Nakamura_
Chief Judge

_Daniel R. Foley_
Associate Judge

_Alexa D.M. Fujise_
Associate Judge